# ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

*FILED IN CLERK'S OFFICE*
*U.S.D.C. Atlanta*

*AUG 0 7 2007*

JAMES N. HATTEN, Clerk

By: _____

*Deputy Clerk*

|  |  |
|---|---|
| FADIL DELKIC, ) | CIVIL ACTION FILE |
| ) | |
| Plaintiff, ) | NO.: **1:07-CV-1864** |
| ) | |
| vs. ) | |
| ) | |
| VLADIMIR DJURDJEV, ) | **BKM** |
| Individually and/or d/b/a ) | |
| UNITED CARGO, INC., or d/b/a ) | |
| MARUNTE TRUCKING, INC., or ) | |
| d/b/a UNITED 2 LOGISTICS, ) | |
| INC., and/or d/b/a JOHN DOE ) | |
| COMPANY and/or JOHN DOE ) | |
| CORPORATION, AND ) | |
| BOJAN ("BOB") PANIC, ) | |
| Individually and/or d/b/a ) | |
| UNITED CARGO, INC., or d/b/a ) | |
| MARUNTE TRUCKING, INC., or ) | |
| d/b/a UNITED 2 LOGISTICS, ) | |
| INC., and/or d/b/a JOHN DOE ) | |
| COMPANY and/or JOHN DOE ) | |
| CORPORATION, ) | |
| ) | ***COMPLAINT & JURY TRIAL DEMAND*** |
| Defendants. ) | |
| ) | |

## COMPLAINT AND JURY DEMAND

Plaintiff hereby files his *Complaint and Jury Demand* and shows this Court as follows:

### JURISDICTION

1.  Jurisdiction over Plaintiff's federal claims is proper in this Court, in part, pursuant to 28 U.S.C.A. §§ 1331 and 1341 (a)(3) and as there is diversity in citizenship of

Plaintiff and all Defendants and the amount in controversy exceeds this Court's $75,000.00 subject matter jurisdictional requirements which trigger this Court's subject matter jurisdiction.

2.   Under, in part, 28 U.S.C.A. § 1367, this Court also has pendant and supplemental jurisdiction over Plaintiff's State law claims as, in part, Plaintiff's federal and State law claims arise out of a common nucleus of operative facts.

*VENUE*

3.   Venue is proper in this Court as Plaintiff resides within this Court's judicial district and within the physical boundaries of the Atlanta Division thereof.

*PARTIES*

4.   Plaintiff is a resident of this Court's judicial district and within the physical boundaries of the Atlanta Division thereof and has been same at all times relevant hereto until the present time.

5.   Joint-Tortfeasor and Defendant VLADIMIR DJURDJEV ("Djurdjev") is a citizen of the State of Illinois and may be served with Summons and Complaint at his Illinois residence, to wit: 1613 Highridge Parkway, Westchester, Illinois, 60154 and/or his business address, to wit:  United 2 Logistics, Inc., located at 2238 Landmeier Road, Elk Grove Village, Illinois, 60007.

*Page 2 of 27*

6.   According to admissions against interest by Defendant(s), at all times relevant hereto, Djurdjev was the alter ego of Joint-Tortfeasor and Defendant UNITED CARGO, INC., which owned and operated the trucking companies called Vladimir Djurdjev and Bojan Panic, upon information and belief, owned and operated same but a/k/a United Cargo/Maruntel Trucking (hereinafter, collectively, referred to as "United").

7.   According to admissions against interest by Defendant(s), at all times relevant hereto, Djurdjev was the alter ego of Joint-Tortfeasor and Defendant MARUNTE TRUCKING, INC., which owned and operated a trucking company called Corneliu Maruntel or visa-versa and, upon information and belief, a/k/a United Cargo/Maruntel Trucking hereinafter, collectively, referred to as "Marunte").

8.   According to admissions against interest by Defendant(s), at all times relevant hereto, Djurdjev is/was the alter ego of Joint-Tortfeasor and Defendant UNITED 2 LOGISTICS, INC. (hereinafter, collectively, referred to as "United 2").

9.   According to admissions against interest by Defendant(s), at all times relevant hereto, Djurdjev was the alter ego of Joint-Tortfeasors and Defendants John Doe Company and John Doe Corporation (hereinafter, collectively, referred to as "John Doe Corporation/Company").

10.  Joint-Tortfeasor and Defendant BOJAN ("BOB") PANIC ("Panic")

is a citizen of the State of Illinois and may be served with Summons and Complaint at his Illinois place of business, to wit: United 2 Logistics, Inc., 2238 Landmeier Road, Elk Grove Village, Illinois, 60007.

11. According to admissions against interest by Defendant(s), at all times relevant hereto, Panic was the alter ego of United.

12. According to admissions against interest by Defendant(s), at all times relevant hereto, Panic was the alter ego of Marunte *albeit* Djurdjev was signing "payroll" checks from United Cargo to pay some of the Marunte drivers–at least me.

13. According to admissions against interest by Defendant(s), at all times relevant hereto, Panic is/was the alter ego of United 2.

14. According to admissions against interest by Defendant(s), at all times relevant hereto, Panic was the alter ego of John Doe Corporation/Company.

*PRELIMINARY REMARKS AND ALLEGATIONS*

All previous paragraphs are incorporated herein-below:

15. Upon information and belief, the assets and/or property of United and Marunte ("company assets")were transferred to and/or converted by Djurdjev and Panic for their own use and enjoyment ("personal assets") and to hide said Company and personal assets in order to further their enterprises,

schemes and/or illicit and/or illegal acts and omissions (hereinafter, collectively, "egregious acts").

16.  Upon information and belief Marunte was/is the successor in fact and law of United and all of United's assets and liabilities passed to Marunte, Djurdjev and Panic; upon information and belief, United 2 was/is the successor in fact and law of Marunte and all of Marunte's assets and liabilities passed to United 2, Djurdjev and Panic; upon information and belief John Doe was/is the successor in fact and law of United 2 and all of United 2's assets and liabilities passed to John Doe, Djurdjev and Panic.

17.  Djurdjev and Panic were former Serbian "concentration/death-camp" officials.

18.  Plaintiff was Bosnian, and was held and tortured in such a camp for about eighteen (18) months.

19.  At the time of his first encounter with Djurdjev and/or Panic, Plaintiff had only been in the United States for about 18 months on a work visa.

   *FACTUAL ALLEGATIONS AND SOME FUNDAMENTAL BASES FOR CLAIMS*

   All previous paragraphs are incorporated herein-below:

Preamble to Claims:

   As Plaintiff is no longer employed by Defendants and as Defendants have exclusive possession, custody and/or control of much of the information and/or documents to support the following

claims against Defendants, each paragraph, when relating to or concerning information held by Defendants, shall be prefixed by the phrase "upon information and belief" reasonably relying upon those "other" sources as described herein whether or not specifically enumerated as such herein-below.

Generalized Fraud Claims:

Under the criminal activity exceptions found for the Intracorporation Conspiracy Doctrine in decisions relating to and concerning, in part, federal and Georgia RICO("RICO") by implication, Plaintiff shows that the subject and alleged corporations fall under those rulings and, as said corporations are merely the alter egos of Defendants Djurdjev and Panic, these two Defendants are, in fact, the corporations and visa versa.

Each of the following paragraphs are to be viewed in the light of Defendants' herein-below enumerated racketeering, nefarious, fraudulent and criminal activities in furtherance of its illicit and illegal schemes to deny said policy claims throughout this matter ("egregious acts"), from the hiring, paying, invoicing, federal and State reporting and other business transactions, and they are to be evaluated under Rule 9 in the context of and in the furtherance of those egregious acts whether or not those egregious acts are specifically enumerated therein, or not.

As show, these allegations thereby authorizing a jury to

award contract and tort penalties, punitive damages, treble RICO
damages, attorney's fees and costs of litigation in favor of
Plaintiff. Misrepresentations by Defendants were made for the
purpose of inducing Plaintiff to act thereon and he did act
thereon to his injury.  Said misrepresentations were willful and
knowingly false and were made by officers, employees, agents
and/or co-conspirators of Defendants for the purpose of deceiving
Plaintiff and said misrepresentations were material to Plaintiff
in his decision to remain employed by Defendants and to continue
to make trip and cargo premium payments on said load and trailer
and brokerage payments on booked deliveries and pick-ups; while
unaware, at the time, of the sham of a brokering trips, premium
invoicing and/or claims investigation/processing, to his injury.

Each paragraph below shall be under the rubric that
Defendants intended to defraud Defendants through a pattern of
misrepresentations, etc., said misrepresentations where known by
Defendants to be false, Plaintiff reasonably believed and relied
upon those false representations, which induced him to act to his
injury as more specifically enumerated herein.  Further, as the
specific dates and times and persons involved in these egregious
acts may not be know at present, Plaintiff will give Defendants,
under in part, Rule 9, sufficient information to be put on notice
of which of their specific fraudulent and egregious acts
Plaintiff has ferreted out to date, despite the fact that

Defendants' egregious acts were/are insidious and very secretive
(as all such RICO conspiracies are) and the fact that Defendant
has much, and in some cases, all of, this information in their
sole possession, custody and control at this time (hopefully
discovery will uncover same).

Defendants targeted Plaintiff simply because he was Bosnian,
here on a work visa, spent time in a Serbian prison/death camp,
was suspicious of law enforcement and/or governments and who was
brought up to fear and not question Serbian authority and to
trust them 100% regardless of the cost or damage to them and not
to complain when wrongfully injured.

The term "*and others*" when used here shall and does include
the captioned "John Does 1 to 6" and/or other co-conspirators.

20. From the later part of 2003 to the end of August 2004,
    Plaintiff was employed as a driver for Djurdjev ("Vladimir
    Djurdjev" was/is also the name of the company) and Plaintiff
    drove Djurdjev's truck and Djurdjev was also the dispatcher
    for Vladimir Djurdjev trucking and Plaintiff's supervisor.

21. When Plaintiff was hired, Djurdjev informed Plaintiff that
    he would have to be paid by the mile driven, *e.g.*, at a rate
    of 36¢ times one-half of the miles driven for each load, or
    the equivalent of 18¢ per mile("18¢ per mile") and not an
    hourly wage plus 18¢ per mile as were the Serbian drivers.

22. Despite questioning Djurdjev, *and others*, about this

apparent inequity, Plaintiff was told that he would have to become an Owner-Operator to get "full mileage" credit.

23. Plaintiff later determined that Djurdjev, *and others*, had reported to the IRS and Illinois that Plaintiff (as well as other "hoodwinked" drivers, had been paid the full 36¢ per mile and they had deducted same as business costs and expenses of operating *their* trucks and employing drivers.

24. Djurdjev, *and others*, illicitly and illegally converted 18¢ per mile for each and every load Plaintiff took for them from October 2003 through August 2004 (average 5400 miles per week or approximately 237,000 miles = $42,560.00).

25. In October 2003, Plaintiff was involved in an accident in South Carolina taking a load from North Carolina to South Carolina for Djurdjev and while driving Djurdjev's truck.

26. Despite having been insured for said accident, Plaintiff was illicitly and/or illegally docked a total of $1,000.00 for said accident.

27. Djurdjev, *and others*, have never provided Plaintiff with any explanation or accounting of the two $500.00 wage deductions other than *You have to pay $1,000.00 for the accident. That is the way it is done in America; truck drivers pay for their own accidents*--to paraphrase Djurdjev; later, Panic.

28. Having been only in the United States for a short time and not knowing "the way it is done" here, Plaintiff was forced

to discontinue his efforts in obtaining a better explanation
and/or an accounting of how the $1000.00 was disbursed
and/or for what is was used by them.

29. Djurdjev, *and others*, illicitly and illegally converted
$500.00 of Plaintiff's wages on or about 31 October 2003.

30. Djurdjev, *and others*, illicitly and illegally converted
$500.00 of Plaintiff's wages on or about 7 November 2003.

31. Because he could not obtain other employment, Plaintiff
continued driving Djurdjev's truck until he was able to
purchase a truck and become an Owner-Operator.

32. In late August 2004, Plaintiff entered into an agreement
with Djurdjev and Panic to be an Owner-Operator under their
brokerage firm, United, however, during 2004 into late 2005,
Maruntel and United were being combined then separated, then
combined again and then they were leasing each others'
equipment and altering company/corporate names, DOT and
State registrations and business locations (upon information
and belief, ostensibly as part of their enterprise, schemes,
predicate acts and racketeering activities to, in part,
convert Plaintiff's funds, hide true ownership of the
various trucking and/or booking firms (hereinafter,
"trucking firms"), illicitly and/or illegally launder funds
and/or transfer funds from one trucking firm to another so
that Plaintiff could never access their assets and/or follow

any illicit and/or illegal paper trail-they hid these facts
from federal and State agencies and filed false reports with
them to cover their tracks and their illegal money
laundering and other racketeering activities) such that
loads 1 through 47 were through, for the most part, United,
loads 48 through 56 were through, for the most part,
Maruntel and the remaining loads 57 through 97 were, for the
most part, during the time which Defendants were evolving
and switching from United to Maruntel to United/Maruntel to
Maruntel/United 2; thus, for simplicity, and for time-line
continuity, Plaintiff will refer to all such brokerage
bookings and events as occurring through United or Maruntel
(but, the terms "United" or "Maruntel" or "Defendants"
herein-below shall and does include all these Defendants,
individually or in concert and any *John Doe* yet uncovered).

33.   On any payment for any load picked up and delivered by
Plaintiff ("trip fee"), as owners and/or d/b/a United,
Djurdjev and Panic (hereinafter, collectively, "United")
charged a ten (10%) percent brokerage fee and, then in 2005,
as owners and/or d/b/a Maruntel, Djurdjev and Panic
(hereinafter, collectively, "Maruntel") charged an eleven
(11%) percent or a twelve (12%) percent brokerage fee (the
terms United and Maruntel are and shall be collectively
referred to as "United" or "Defendants").

34.  This trip fee was to be determined ONLY by the company (or
     by a larger broker subcontracting out to United or Maruntel)
     requiring load pick up and delivery and United was not
     supposed to adjust said trip fee downward (i.e., illicitly
     or illegally skim amounts off the top), retain the
     difference and obtain additional profits for United.

35.  Further, United required Plaintiff to pay into escrow an
     "emergency fund" totaling $1,000.00; which was deducted in
     four (4) equal $250.00 installments from Plaintiff's weekly
     earnings.

36.  Further, United required Plaintiff, as he did not own a
     trailer, to pay the cost of leasing a trailer for his truck
     ("rig") and United agreed to advance that cost.

37.  This cost was to be determined by the lessor ONLY and United
     was not supposed to add any fees or costs thereto or inflate
     the cost of said rental to obtain additional profits for
     United.

38.  Further, as Plaintiff did not have his own insurance, United
     required Plaintiff to reimburse United for the actual cost
     of insuring Plaintiff's rig, which United advanced for said
     required rig insurance.

39.  This cost was to be determined by the insurer ONLY and
     United was not supposed to add any fees or costs thereto or
     inflate the cost of said rig insurance to obtain additional

profits for United.

40.    Further, as Plaintiff leased the trailer for his rig and he
       did not have his own insurance on that trailer, United
       required Plaintiff to reimburse United for the actual cost
       of insuring Plaintiff's leased trailer, which United
       advanced for said required leased-trailer insurance.

41.    This cost was to be determined by the insurer ONLY and
       United was not supposed to add any fees or costs thereto or
       inflate the cost of said trailer insurance to obtain
       additional profits for United.

42.    Further, as Plaintiff did own the cargo he was hauling and
       did not have his own cargo insurance, United required
       Plaintiff to reimburse United for the actual cost of
       insuring the cargo which Plaintiff hauled and United agreed
       to advance said cargo insurance for Plaintiff.

43.    This cost was to be determined by the insurer ONLY and
       United was not supposed to add any fees or costs thereto or
       inflate the cost of said cargo insurance to obtain
       additional profits for United.

44.    As part of their agreement United debited Plaintiff's
       payments for fuel tax, however, this cost was to be
       determined by the federal and State regulation ONLY and
       United was not supposed to add any fees or costs thereto or
       inflate the cost of said fuel tax to obtain additional

profits for United.

45.   As part of his agreement with United, Plaintiff was to
      receive $35.00 per hour wait time and $0.50 per mile when he
      had to travel with an empty trailer for pick ups; but, when
      Plaintiff was required to pay for an unloader, the broker or
      shipper would reimburse him through United and United was
      not to include that amount as part of a trip fee and/or and
      was not to take a brokerage fee out of same and/or convert
      same to its own use and/or enjoyment.

46.   As part of his agreement with United, Plaintiff was allowed
      to receive advances while on the road for fuel, repairs, rig
      and/or trailer maintenance, emergencies, food, lodging, or
      the like ("advances"), which he agreed to reimburse dollar-
      for-dollar out of his next check.

47.   It was agreed that United would receive the trip fees
      directly from the shippers or through subcontracting
      brokers, deduct United's 10% brokerage fees, deduct United's
      payment to the insurer for Plaintiff's rig, deduct United's
      payment to the insurer for the leased trailer, deduct
      United's payment for the leasing of the trailer and deduct
      any advances made to Plaintiff during that pay cycle or any
      advances due from prior cycles.

48.   Some of the aforementioned brokers during all times relevant
      hereto were/are: C.H. Robinson-Chicago Central; Quebecor

World Logistics; Turbo Logistics-Expedite; Schneider National, Inc.; Transportation Solutions Group, LLC.; Hub City terminals, Inc.; Custom Companies, Inc.; Alert cargo Express, inc.; DUNI Corporation c/o BAX Global Supply Chain Management; ROC Transport, Inc.; Swan transportation Service, LTD.; Sureway transportation Company; Volume Transportation Service; World Logistics Group, Inc.; First Cut Produce, Inc.; Damiron Transportation Service, Inc.; Nationwide Transportation, Inc.; American Distribution Service, Inc.; and, Exel Transportation Service.

49.  The aforementioned trailer lessor was/is Crystal Leasing, LLC., 7700 Brush Hill Road, Suite 222, Burr ridge, Illinois 60527 (It should be noted here that United Cargo was renting trailers from the Crystal Company; and, before *Defendant(s)* rented from Crystal Company *he/they/it* also rented from Systems Transportation Equipment, Incorporated, located at 2700 Madison Avenue, Bellwood, IL 60104-2218, office phone number: 1 (708) 547-5500.

50.  The aforementioned insurers for Plaintiff's rig, Plaintiff's leased trailer and/or the cargo Plaintiff hauled were/are, in part: American International Group ("AIG"), Euclid Insurers, American Contractors Indemnity Company, Canal Insurance Company, Illinois National Insurance Company and Federal Insurance Company.

*MORE SPECIFIC EGREGIOUS AND ILLEGAL ACTS BY DEFENDANTS AND THEIR CO-CONSPIRATORS* (for RICO predicate acts and Rule 9 "testing")

All previous paragraphs are incorporated herein-below:

(Note: All dollar amounts herein *rounded up* to nearest $1.00)

51. <u>August 2004 (Load #1)</u>:  No cargo insurance advanced by United but Plaintiff charged $38.00 for same, Plaintiff overcharged $5.00 for trailer rental and Plaintiff paid $15.00 for fuel tax but same was never submitted for him by United as agreed (sub total = <u>$58.00</u>).

52. <u>September 2004 (Loads #2 to #15)</u>: United skimmed $290.00 from trip fees, no cargo insurance advanced by United but Plaintiff debited $585.00, Plaintiff overcharged $32.00 for trailer rental, Load #8, Plaintiff drove empty for 650 mile but never paid $325.00 fee by United and Plaintiff paid $127.00 for fuel tax but same was never submitted for him by United (<u>$1,369.00</u>; sub total= <u>$1,427.00</u>)

53. <u>October 2004 (Loads #16 to 30)</u>:  United skimmed $1,000.00 from trip fees, no cargo insurance advanced by United but Plaintiff debited $638.00, Plaintiff overcharged $37.00 for trailer rental, and Plaintiff paid $123.00 for fuel tax but same was never submitted by United (<u>$1,369.00</u>; sub total = <u>$2,796.00</u>)

54. <u>November 2004 (Loads #31 to 40)</u>:  United skimmed $450.00 from trip fees, no cargo insurance advanced by United but

Plaintiff debited $450.00, Plaintiff overcharged $31.00 for trailer rental, and Plaintiff paid $148.00 for fuel tax but same was never submitted by United ($1,080.00; sub total = $3,876.00)

55. December 2004 (Loads #41 to 47): United skimmed $300.00 from trip fees, no cargo insurance advanced by United but Plaintiff debited $548.00, Plaintiff overcharged $32.00 for trailer rental, and Plaintiff paid $263.00 for fuel tax but same was never submitted by United ($1,045.00; sub total = $4,921.00)

56. January 2005 (Loads #48 to 59): United skimmed $475.00 from trip fees, no cargo insurance advanced by United but Plaintiff debited $450.00, Plaintiff overcharged $35.00 for trailer rental, and Plaintiff paid $90.00 for fuel tax but same was never submitted by United ($1,048.00; sub total = $4,928.00)

57. February 2005 (Loads #60 to 70): United skimmed $50.00 from trip fees, no cargo insurance advanced by United but Plaintiff debited $660.00, Plaintiff overcharged $37.00 for trailer rental, and Plaintiff paid $152.00 for fuel tax but same was never submitted by United ($899.00; sub total = $5,823.00)

58. March 2005 (Loads #71 to 84): United skimmed $200.00 from trip fees, no cargo insurance advanced by United but

Plaintiff debited $600.00, Plaintiff overcharged $35.00 for trailer rental, and Plaintiff paid $123.00 for fuel tax but same was never submitted by United ($958.00; sub total = $6,781.00)

59. April 2005 (Loads #84 to 97): United skimmed $150.00 from trip fees, no cargo insurance advanced by United but Plaintiff debited $440.00, Plaintiff overcharged $29.00 for trailer rental, and Plaintiff paid $10.00 for fuel tax but same was never submitted by United ($629.00; final *minimal* total = $7,410.00)

60. Thus, at minimum, Defendants illicitly and illegally converted $7,410.00 of Plaintiff's funds by *illegally skimming* trip fees earned by Plaintiff, by illicitly and illegally charging Plaintiff for cargo insurance which they never had on Plaintiff's loads or which they illegally set themselves up as a DOT insurer and issued "policies" as such "alternate insurer" in Illinois and for DOT, by illicitly and illegally overcharging Plaintiff for the third-party leasing of his trailer(s) and by illicitly and illegally charging Plaintiff for fuel taxes which they never paid.

61. Further, Defendants listed miscellaneous charges on nearly every weekly *pay period invoice* while Plaintiff was an employee and/or Owner-Operator and, to this day, Defendants refuse to give Plaintiff any explanation for those charges

or an accounting thereof despite repeated requests for same.

62. The total amount of these "phantom charges" exceeds $2,500.00 plus 18% per annum interest from date of charge.

63. These egregious acts by Defendants, individually and in concert, give rise to federal and State claims enumerated herein and/or as ferreted-out during discovery, and, to the limit provided by law, Defendants are jointly and severally liable for any and all damages arising therefrom.

64. Defendants conspired to and did commit the herein illicit and/or illegal acts, *inter alia*, as part of their enterprise and schemes to deprive Plaintiff of his property, funds and financial resources, and other personal resources, by and through said schemes, predicate acts and nefarious and racketeering activities (see, in part, the federal and State claims enumerated below)and any and all such RICO, intentional torts and/or racketeering and nefarious schemes and activities impacting and/or directed at Plaintiff.

CLAIMS

Federal Claims:

All previous paragraphs are incorporated herein-below:

Mail Fraud:

65. For the within and/or foregoing reasons and by and through subject egregious acts enumerated herein, Defendants used the mails in furtherance of their schemes, enterprise and

nefarious and racketeering activities.

66. Thus, Defendants are liable to Plaintiff for all damages arising form their Mail Fraud.

<u>Wire Fraud</u>:

67. For the within and/or foregoing reasons and by and through subject egregious acts enumerated herein, Defendants used the wires in furtherance of their schemes, enterprise and nefarious and racketeering activities.

68. Thus, Defendants are liable to Plaintiff for all damages arising form their Wire Fraud.

<u>Conspiracy</u>:

69. For the within and/or foregoing reasons and by and through subject egregious acts enumerated herein, Defendants used various conspiracies in furtherance of their schemes, enterprise and nefarious and racketeering activities.

70. Thus, Defendants are liable to Plaintiff for all damages arising form their conspiracies, individually or in concert.

<u>False Swearing</u>:

71. For the within and/or foregoing reasons and by and through subject egregious acts enumerated herein, Defendants used false swearings, bogus reports, fraudulent filings with State and federal agencies and the wires in furtherance of their schemes, enterprise and nefarious and racketeering activities.

72.  Thus, Defendants are liable to Plaintiff for all damages
     arising form their false swearings.

Extortion:

73.  For the within and/or foregoing reasons and by and through
     subject egregious acts enumerated herein, Defendants used
     extortion in furtherance of their schemes, enterprise and
     nefarious and racketeering activities.

74.  Thus, Defendants are liable to Plaintiff for all damages
     arising form their extortion activities towards Plaintiff.

Federal RICO Act:

75.  For the within and/or foregoing reasons, the subject
     egregious predicate acts enumerated herein evidence
     Defendants use of same in furtherance of their schemes,
     enterprise and nefarious and racketeering activities; all of
     which are predicate acts as defined by the federal RICO Act.

76.  Thus, Defendants are liable to Plaintiff for treble damages,
     Punitive damages, attorney fees and costs of litigation and
     all such like damages arising from such activities and/or
     all such nefarious schemes and activities directed at
     Plaintiff.

          State Claims:

     All previous paragraphs are incorporated herein-below:

Georgia RICO Act:

77.  For the within and/or foregoing reasons, the subject

egregious predicate acts enumerated herein evidence
Defendants use of same in furtherance of their schemes,
enterprise and nefarious and racketeering activities; all of
which are predicate acts as defined by the Georgia RICO Act.

78. Thus, Defendants are liable to Plaintiff for treble damages,
Punitive damages, attorney fees and costs of litigation and
all such like damages arising from such racketeering and
criminal activities or arising from all such nefarious
schemes and activities directed at or impacting Plaintiff.

79. Under Georgia law, the proof of any RICO claims is by a
preponderance of evidence.

Theft by Conversion:

80. For the within and/or foregoing reasons, the subject
egregious predicate acts, such as theft by conversion,
enumerated herein, evidence Defendants use of same in
furtherance of their schemes, enterprise and nefarious and
racketeering activities; all of which are predicate acts as
defined by RICO and/or are torts under Georgia law.

81. Thus, Defendants are liable to Plaintiff for all damages
arising from such theft activities and/or all such nefarious
schemes and activities directed at Plaintiff.

Theft by Deception:

82. For the within and/or foregoing reasons, the subject
egregious predicate, acts such as theft by deception,

enumerated herein, evidence Defendants' use of same in furtherance of their schemes, enterprise and nefarious and racketeering activities; all of which are predicate acts as defined by RICO and/or are torts under Georgia law.

83. Thus, Defendants are liable to Plaintiff for all damages arising from such activities and/or all such nefarious schemes and activities directed at Plaintiff.

Fraud:

84. For the within and/or foregoing reasons (see, in part, specific acts and dates listed above) the subject egregious predicate acts, such as criminal, statutory and common law fraud enumerated herein, evidence Defendants use of same in furtherance of their schemes, enterprise and nefarious and racketeering activities; all of which may be predicate acts as defined by RICO Act and/or are tort under Georgia law.

85. Thus, Defendants are liable to Plaintiff for all damages arising from such fraudulent activities and/or all such nefarious schemes and activities directed at Plaintiff.

Breach of Contract and/or Breach of Fiduciary Duty:

86. For the within and/or foregoing reasons, the subject egregious predicate acts, tortuous breach of contract and/or breach of fiduciary duties enumerated herein, evidence Defendants use of same in furtherance of their schemes, enterprise and nefarious and racketeering activities; all of

which may be predicate acts as defined by RICO and/or are
intentional torts and/or negligent torts under Geogia law.

87.  Thus, Defendants are liable to Plaintiff for all damages
     arising from such activities and/or directed at Plaintiff.

Conspiracy:

88.  For the within and/or foregoing reasons, the subject
     egregious predicate acts, conspiracy, individually or in
     concert with other Defendant(s) or John Does enumerated
     herein, evidence Defendants use of same in furtherance of
     their schemes, enterprise and nefarious and racketeering
     activities; all of which are predicate acts as defined by
     RICO and/or are torts under Georgia law.

89.  Thus, Defendants are liable to Plaintiff for, *i.e.*, treble
     RICO damages arising from such activities and/or all such
     nefarious schemes and activities directed at Plaintiff.

False Swearings:

90.  For the within and/or foregoing reasons, the subject
     egregious predicate acts, false swearings as enumerated
     herein, evidence Defendants use of same in furtherance of
     their schemes, enterprise and nefarious and racketeering
     activities; all of which are predicate acts as defined by
     RICO and/or are torts under Georgia law.

91.  Thus, Defendants, individually and severally, to the extent
     allowed by law, are liable to Plaintiff for all damages

arising from such activities and/or such nefarious schemes and activities directed at, which injured, Plaintiff.

Extortion:

92.  For the within and/or foregoing reasons, the subject egregious predicate acts, extortion as enumerated herein, evidence Defendants use of same in furtherance of their schemes, enterprise and nefarious and racketeering activities; all of which are predicate acts as defined by RICO and/or are torts under Georgia law.

93.  Thus, Defendants are liable to Plaintiff for all damages arising from such activities and/or such nefarious schemes and activities directed at, which injured, Plaintiff.

Stubborn Litigiousness:

94.  Despite repeated attempts to resolves these matters, Defendants have repeatedly ignored Plaintiff's pleas for a reasonable resolution and have forced Plaintiff to hire counsel and file this action; all of which has caused Plaintiff undue bother, inconvenience and trouble as defined by the Georgia within its "Stubbornly Litigious" torts.

95.  Therefore, Defendants are liable to Plaintiff of all damages arising frm their stubborn litigiousness, including, but not limited to, attorney fees and costs of litigation.

Combined Federal and State Claim(s):

All previous paragraphs are incorporated herein-below:

Plaintiff, by way of further enumerating his specific

claims, injuries to his assets and specific monetary

damages, offers the following:

Special Damages:

96.  Plaintiff claims the following, to-date, special damages:

     $ 42,500.00          (MILEAGE AMOUNTS CONVERTED);

     $  7,410.00          (CONVERTED TRIP FEES, ETC.); AND,

     $  2,500.00          (*PHANTOM* CHARGES CONVERTED).

     _____

     $ 52,410.00          PARTIAL TOTAL FUNDS CONVERTED; AND,

     $  6,500.00          ATTORNEY FEES AND COSTS TO DATE.

     _____

     **$ 58,910.00          TOTAL SPECIAL DAMAGES TO DATE**.

Miscellaneous Allegations and/or Claims For Damages:

     All previous paragraphs are incorporated herein-below:

97.  Defendants, upon information and belief, have illicitly

     transferred funds and assets between companies and then,

     finally, to Defendant United 2 Logistics, their alter ego,

     to hide same from Plaintiff, creditors and the IRS.

98.  Defendants, upon information and belief, are now claiming to

     the DOT, etc., that they only have 16 trucks to DOT when

     they, in fact, have 50 trucks, at least, under their

     possession, custody and control.

99.  Defendants, upon information and belief, only pay insurance

for 16 and/or forged the paperwork for the other 34 trucks.

100. Plaintiff reserves the right to amend or supplement his within allegations, claims, damages and prayers for relief as new or better information is obtained through the discovery process or otherwise.

**WHEREFORE**, Plaintiff prays that this case be tried before a jury of twelve and that this Court award him special damages in the amount of at least $58,910.00 and compensatory, consequential and punitive damages, and reasonable attorney fees and costs of litigation in an amount as awarded by a fair and impartial jury, treble RICO damages, stubbornly litigious damages and award such further and such other relief this Court deems fair, just and/or equitable.

Respectfully submitted,

*VILLANI & ASSOCIATES, P.C.*

Ralph J. Villani
GA Bar No. 727700

2055-C Scenic Hwy., N.
Suite 404
Snellville, GA 30078-6167

(TEL)  (770) 985-6773
(FAX)  (770) 979-5190

(E/M)  law2001@bellsouth.net

COUNSEL FOR PLAINTIFF

JS44 (Rev. 5/05 NDGA)                    CIVIL COVER SHEET     ORIGINAL

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket record. (SEE INSTRUCTIONS ATTACHED)

1:07-CV-1864

## I. (a) PLAINTIFF(S)

FADIL DELKIC

## DEFENDANT(S)

VLADIMIR DJURDJEV, BOJAN ("BOB") PANIC, ET AL.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED
PLAINTIFF  GWINNETT COUNTY, GA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED
DEFENDANT_____
(IN U.S. PLTF CASES ONLY)

NOTE  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

BBM

**(c) ATTORNEYS** (FIRM NAME, ADDRESS, TELEPHONE NUMBER, AND E-MAIL ADDRESS)

Ralph J. Villani
GA Bar No. 727700
2055-C Scenic Hwy., N.
Suite 404
Snellville, GA 30078-6167

**ATTORNEYS** (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN "X" IN ONE BOX ONLY)

- [ ] 1 U.S. GOVERNMENT PLAINTIFF
- [ ] 2 U.S. GOVERNMENT DEFENDANT
- [ ] 3 FEDERAL QUESTION (U.S. GOVERNMENT NOT A PARTY)
- [✓] 4 DIVERSITY (INDICATE CITIZENSHIP OF PARTIES IN ITEM III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

| PLF | DEF | | PLF | DEF | |
|---|---|---|---|---|---|
| [✓] 1 | [ ] 1 | CITIZEN OF THIS STATE | [ ] 4 | [ ] 4 | INCORPORATED OR PRINCIPAL PLACE OF BUSINESS IN THIS STATE |
| [ ] 2 | [✓] 2 | CITIZEN OF ANOTHER STATE | [ ] 5 | [ ] 5 | INCORPORATED AND PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE |
| [ ] 3 | [ ] 3 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 6 | [ ] 6 | FOREIGN NATION |

## IV. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- [✓] 1 ORIGINAL PROCEEDING
- [ ] 2 REMOVED FROM STATE COURT
- [ ] 3 REMANDED FROM APPELLATE COURT
- [ ] 4 REINSTATED OR REOPENED
- [ ] 5 ANOTHER DISTRICT (SPECIFY DISTRICT) TRANSFERRED FROM
- [ ] 6 MULTIDISTRICT LITIGATION
- [ ] 7 JUDGE FROM MAGISTRATE JUDGE JUDGMENT APPEAL TO DISTRICT

## V. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE - DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

(IF COMPLEX, CHECK REASON BELOW)

- [ ] 1. Unusually large number of parties.
- [✓] 2. Unusually large number of claims or defenses.
- [✓] 3. Factual issues are exceptionally complex
- [✓] 4. Greater than normal volume of evidence.
- [✓] 5. Extended discovery period is needed.
- [✓] 6. Problems locating or preserving evidence
- [ ] 7. Pending parallel investigations or actions by government.
- [ ] 8. Multiple use of experts.
- [ ] 9. Need for discovery outside United States boundaries.
- [ ] 10. Existence of highly technical issues and proof.

## CONTINUED ON REVERSE

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT $_____  APPLYING IFP_____  MAG. JUDGE (IFP)_____

JUDGE BBM  MAG. JUDGE_____  NATURE OF SUIT 370  CAUSE OF ACTION 28:1332 F
(Referral)

# VI. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

**CONTRACT - "0" MONTHS DISCOVERY TRACK**
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL. VETERANS)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS

**CONTRACT - "4" MONTHS DISCOVERY TRACK**
- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 151 MEDICARE ACT
- [ ] 160 STOCKHOLDERS' SUITS
- [ ] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**REAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**TORTS - PERSONAL INJURY - "4" MONTHS DISCOVERY TRACK**
- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY
- [ ] 362 PERSONAL INJURY - MEDICAL MALPRACTICE
- [ ] 365 PERSONAL INJURY - PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**TORTS - PERSONAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- [x] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**BANKRUPTCY - "0" MONTHS DISCOVERY TRACK**
- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

**CIVIL RIGHTS - "4" MONTHS DISCOVERY TRACK**
- [ ] 441 VOTING
- [ ] 442 EMPLOYMENT
- [ ] 443 HOUSING/ ACCOMMODATIONS
- [ ] 444 WELFARE
- [ ] 440 OTHER CIVIL RIGHTS
- [ ] 445 AMERICANS with DISABILITIES - Employment
- [ ] 446 AMERICANS with DISABILITIES - Other

**PRISONER PETITIONS - "0" MONTHS DISCOVERY TRACK**
- [ ] 510 MOTIONS TO VACATE SENTENCE
- [ ] 530 HABEAS CORPUS
- [ ] 535 HABEAS CORPUS-DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER
- [ ] 550 CIVIL RIGHTS (Filed Pro se)
- [ ] 555 PRISON CONDITION(S) (Filed Pro se)

**PRISONER PETITIONS - "4" MONTHS DISCOVERY TRACK**
- [ ] 550 CIVIL RIGHTS (Filed by Counsel)
- [ ] 555 PRISON CONDITION(S) (Filed by Counsel)

**FORFEITURE/PENALTY - "4" MONTHS DISCOVERY TRACK**
- [ ] 610 AGRICULTURE
- [ ] 620 FOOD & DRUG
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 630 LIQUOR LAWS
- [ ] 640 R.R. & TRUCK
- [ ] 650 AIRLINE REGS.
- [ ] 660 OCCUPATIONAL SAFETY/HEALTH
- [ ] 690 OTHER

**LABOR - "4" MONTHS DISCOVERY TRACK**
- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT. RELATIONS
- [ ] 730 LABOR/MGMT. REPORTING & DISCLOSURE ACT
- [ ] 740 RAILWAY LABOR ACT
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL. RET. INC. SECURITY ACT

**PROPERTY RIGHTS - "4" MONTHS DISCOVERY TRACK**
- [ ] 820 COPYRIGHTS
- [ ] 840 TRADEMARK

**PROPERTY RIGHTS - "8" MONTHS DISCOVERY TRACK**
- [ ] 830 PATENT

**SOCIAL SECURITY - "0" MONTHS DISCOVERY TRACK**
- [ ] 861 HIA (1395ff)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC (405(g))
- [ ] 863 DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS - "4" MONTHS DISCOVERY TRACK**
- [ ] 870 TAXES (U.S. PLAINTIFF OR DEFENDANT)
- [ ] 871 IRS - THIRD PARTY 26 USC 7609

**OTHER STATUTES - "4" MONTHS DISCOVERY TRACK**
- [ ] 400 STATE REAPPORTIONMENT
- [ ] 430 BANKS AND BANKING
- [ ] 450 COMMERCE/ICC RATES/ETC.
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
- [ ] 480 CONSUMER CREDIT
- [ ] 490 CABLE/SATELLITE TV
- [ ] 810 SELECTIVE SERVICE
- [ ] 875 CUSTOMER CHALLENGE 12 USC 3410
- [ ] 891 AGRICULTURAL ACTS
- [ ] 892 ECONOMIC STABILIZATION ACT
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 894 ENERGY ALLOCATION ACT
- [ ] 895 FREEDOM OF INFORMATION ACT
- [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES
- [ ] 890 OTHER STATUTORY ACTIONS

**OTHER STATUTES - "8" MONTHS DISCOVERY TRACK**
- [ ] 410 ANTITRUST
- [ ] 850 SECURITIES / COMMODITIES / EXCHANGE

**OTHER STATUTES - "0" MONTHS DISCOVERY TRACK**
- [ ] ARBITRATION (CONFIRM/VACATE/ORDER/MODIFY)

**(Note: Please mark underlying Nature of Suit as well)**

**\* PLEASE NOTE DISCOVERY TRACK FOR EACH CASE TYPE. SEE LOCAL RULE 26.3**

# VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF CLASS ACTION UNDER F.R.Civ.P. 23   DEMAND $_____

JURY DEMAND [x] YES [ ] NO (CHECK YES **ONLY** IF DEMANDED IN COMPLAINT)

# VIII. RELATED/REFILED CASE(S) IF ANY

JUDGE_____     DOCKET NO._____

CIVIL CASES ARE DEEMED RELATED IF THE PENDING CASE INVOLVES: (CHECK APPROPRIATE BOX)

- [ ] 1. PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 2. SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT, COPYRIGHT OR TRADEMARK INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 4. APPEALS ARISING OUT OF THE SAME BANKRUPTCY CASE AND ANY CASE RELATED THERETO WHICH HAVE BEEN DECIDED BY THE SAME BANKRUPTCY JUDGE.
- [ ] 5. REPETITIVE CASES FILED BY PRO SE LITIGANTS.
- [ ] 6. COMPANION OR RELATED CASE TO CASE(S) BEING SIMULTANEOUSLY FILED (INCLUDE ABBREVIATED STYLE OF OTHER CASE(S)):

- [ ] 7. EITHER SOME OR ALL OF THE PARTIES AND ISSUES IN THIS CASE WERE PREVIOUSLY INVOLVED IN CASE NO. _____, WHICH WAS DISMISSED. THIS CASE [ ] IS [ ] IS NOT (check one box) SUBSTANTIALLY THE SAME CASE.

_Ralph J. Villani_ (GA BAR NO 727700)

SIGNATURE OF ATTORNEY OF RECORD                              DATE

# ORIGINAL

AO 440 (Rev. 8/01) Summons in a Civil Action

## UNITED STATES DISTRICT COURT

_NORTHERN_       District of     _GEORGIA_

FADIL DELKIC,
Plaintiff,

**SUMMONS IN A CIVIL ACTION**

V.
VLADIMIR DJURDJEV and
BOJAN ("BOB") PANIC, ET AL.,
_Defendants._

CASE NUMBER:

# 1:07-CV-1864

_PERSONAL SERVICE ONLY_

TO: (Name and address of Defendant)

VLADIMIR DJURDJEV, individually and d/b/a Defendant Corporations,
c/o United 2 Logistics, Inc.
2238 Landmeier Road
Elk Grove Village, Illinois 60007

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Ralph J. Villani, Esquire
GA Bar No. 727700

2055-C Scenic Hwy., N.
Suite 404
Snellville, GA 30078-6167

(TEL)  (770) 985-6773
(FAX)  (770) 979-5190

(E/M)  law2001@bellsouth.net

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**JAMES N. HATTEN**

CLERK

(By) DEPUTY CLERK

7 AUG 2007

DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL TBD $0.00 |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                                Date                    *Signature of Server*


                              _____
                                             *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# ORIGINAL

&AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____NORTHERN_____  District of  _____GEORGIA_____

FADIL DELKIC,
Plaintiff,

V.

VLADIMIR DJURDJEV and
BOJAN ("BOB") PANIC, ET AL.,

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

1:07-CV-1864

PERSONAL SERVICE ONLY

TO: (Name and address of Defendant)

VLADIMIR DJURDJEV, individually and d/b/a Defendant Corporations,
1613 Highridge Parkway.
Westchester, Illinois 60154

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Ralph J. Villani, Esquire
GA Bar No. 727700

2055-C Scenic Hwy., N.
Suite 404
Snellville, GA 30078-6167

(TEL) (770) 985-6773
(FAX) (770) 979-5190

(E/M) law2001@bellsouth.net

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

JAMES N. HATTEN                    0 7 AUG 2007

_____      _____
CLERK                              DATE

_____
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                        Date                        *Signature of Server*

                                       _____
                                       *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# ORIGINAL

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

NORTHERN _____ District of _____ GEORGIA

FADIL DELKIC,
Plaintiff,

V.

VLADIMIR DJURDJEV and
BOJAN ("BOB") PANIC, ET AL.,
Defendants.

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

# 1:07-CV-1864

_PERSONAL SERVICE ONLY_

TO: (Name and address of Defendant)

BOJAN ("BOB") PANIC, individually and d/b/a Defendant Corporations,
c/o United 2 Logistics, Inc.
2238 Landmeier Road
Elk Grove Village, Illinois 60007

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Ralph J. Villani, Esquire
GA Bar No. 727700

2055-C Scenic Hwy., N.
Suite 404
Snellville, GA 30078-6167

(TEL) (770) 985-6773
(FAX) (770) 979-5190

(E/M) law2001@bellsouth.net

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**JAMES N. HATTEN**                            0 7 AUG 2007

CLERK                                          DATE

(BY) DEPUTY CLERK

%AO 440 (Rev. 8/01) Summons in a Civil Action

# RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service.*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL TBD $0.00 |
|---|---|---|

## DECLARATION OF SERVER

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                     Date                              *Signature of Server*


                                     _____
                                          *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.