IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FADIL DELKIC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| VLADIMIR DJURDJEV, BOJAN | ) |
| ("BOB") PANIC, *ET AL.*, | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION FILE

NO.:   <u>1:07-cv-1864-BBM</u>

*Hon Beverly B. Martin, Presiding*

*RESPONSE*

<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS COMPLAINT AND REQUEST FOR ATTORNEY'S FEES
AND AUTHORITY THEREFOR ("RESPONSE")</u>

Plaintiff hereby responds to Defendants' *Motion to Dismiss
Complaint and Request For Attorneys' Fees* ("*Motion and Request*")
and shows this Court as follows:

<u>Preliminary Argument</u>:

Because Defendants have filed subject motion to dismiss,
this Court must accept as true the factual allegations in
Plaintiff's Complaint, as twice-amended [Docs. 1, 14 and 15].
<u>See</u>, *e.g.*, <u>Leatherman v. Tarrant County Narcotics Intelligence
and Coordination Unit</u>, 507 U.S. 163, 164, (113 S.Ct. 1160)
(1993).

<u>Support for Plaintiff's Opposition to Defendants' Instant Motion</u>:

In support of his *Response*, Plaintiff relies, in part, upon:

1.    The record in this case (*which is incorporated herein*);

2.    Plaintiff's Affidavit and verification, Certification

*Page 1 of  36*

of Service Upon Defendants, and Plaintiff's two

proposed Amended Complaints; and,

3.    Plaintiff's factual allegations, arguments and brief.

Procedural History and Relevant Factual Allegations:

1.    Plaintiff filed his Complaint on August 7, 2007. [Doc. 1]

2.    This Court Ordered Plaintiff to show cause relating and

concerning service upon Defendants. [Doc. 3]

3.    Plaintiff responded to said show cause Order and certified

to this Court that Defendants were duly and properly served

by Cook County, IL, Sheriff Deputies on December 12, 2007.

[Doc. 4 and Doc. 5], in part, as follows:

4.    On or about November 3, 2007, Plaintiff took possession of

all of the service documents so that he could personally

arrange legal and proper, timely service upon Defendants.

5.    Plaintiff is an over-the-road truck driver and makes many

trips per year to Chicago, IL, the location of Defendants.

6.    From November 3, 2007 through November 12, 2007, Plaintiff

took loads to New York, then to Florida, back to Atlanta,

then to Pennsylvania but could not schedule any such trips

to Chicago, IL in the foreseeable future.

7.    On or about November 12, 2007, and several days thereafter,

Plaintiff contacted several friends in Chicago, IL and

requested their assistance in serving Defendants, however,

once each one was informed the nature of the lawsuit and the

Defendants involved, each one refused and indicated that they were unwilling to be involved with serving Defendants and did not want any trouble near where they lived.

8.   Finally, after several such rejections, Plaintiff was able to secure a load for delivery to Chicago, IL.

9.   On or about November 30, 2007, Plaintiff picked up a load from Suwanee, GA for delivery to Chicago, IL and he traveled straight there and arrived in Chicago, IL on or just before December 3, 2007.

10.  On or before December 3, 2007, Plaintiff dropped off his load and trailer and started looking for a local police station to inquire about getting Defendants served by law enforcement officers and/or as required under Illinois law.

11.  While driving there, Plaintiff spotted a law enforcement officer and inquired about local police station in Elk Grove, IL in order to make further inquiries on service.

12.  The law enforcement office, using his computer and radio, finally was able to give Plaintiff the required service information and phone numbers for Plaintiff to call (Sheriff's facilities).

13.  Plaintiff, called them, verified that they did civil process drove there, however, once he arrived at said Sheriff's facility and handed them the papers to be served upon Defendants, Plaintiff was informed that they did not do this

type of service because the lawsuit was filed "out-of-state" notwithstanding it was filed in federal court.

14.  The officers there directed Plaintiff to the courthouse in Meadows, IL but when he arrived there, he was told that the service site was not in their county and directed Plaintiff to Cook County Sheriff's office and gave him the phone number for the civil process division there.

15.  Plaintiff called that number but was informed that the location was not in Cook County, IL and that it was in Lake County, IL and they gave him directions and numbers thereto.

16.  Plaintiff called the Lake County Sheriff's office but, again, was informed that Elk Grove was not in their county.

17.  Plaintiff after numerous additional calls and attempts to determine the correct jurisdiction for Sheriff's service upon Defendants, finally reached someone who directed him to the Meadows County Courthouse, again.

18.  When he arrived there, the clerk became indignant and told him that everyone was wrong, printed out proof that Elk Grove was in Cook County, IL, and Plaintiff received directions to the Cook County Sheriff's Office, #3 Foreign Writ Division and took a taxi to that location.

19.  After many grueling hours, Plaintiff arrived again at the Cook County Sheriff's department and was directed to the 7th floor and handed them the service documents.

20. Notwithstanding Plaintiff recounting his traveling all over Chicago looking for the right office and the fact that the service documents must be served upon Defendants on or before December 5, 2007, the receptionist off-handedly told Plaintiff this was the wrong place, again.

21. As Plaintiff was leaving to find the "right" location, a detective passing by heard the conversation, looked at the paperwork and informed the receptionist that Elk Grove, IL was indeed in Cook County and she needed to process the documents as soon as possible (he personally promised Plaintiff that the papers would be served the next day or by December 5, 2007, the latest, due to the time constraints).

22. Plaintiff was diligent in that he (1) tried to get deliveries to Chicago, IL in the beginning of November, 2007 so that he could personally deliver same to Chicago law enforcement personnel for service upon Defendants; (2) tried to get his friends in Chicago, IL to deliver the service documents; (3), was finally able to arrange for a delivery to Chicago, Il and once there, made at least 15 phone calls and tried at least four (4) different location to delivery the service documents and pay for said service on Defendants; (5) took a taxi to the Cook County Sheriff's Office and, only with the intervention of Providence, was able to arranged and pay for service of said documents on

Defendants.

23. Finally, Plaintiff was assured that, given the time constraints and fast-approaching 120-day limit, that said documents would be served upon Defendants on or before the deadline, December 5, 2007.

24. Plaintiff reasonably relied upon the Cook County Sheriff's Office personnel's assertions (especially those of the aforementioned detective), otherwise he would have located and paid a private process server to serve defendants with said documents that day and had same served that day (December 3, 2007).

25. Thus, as previously argued, Defendants were duly and properly served and said service, although 7 days after the 120-day Rule 4 window had closed, met the spirit and intent of Rule 4 (see argument and cites below) and this Court must allow said service upon Defendants stand as properly served and timely served on December 12, 2008 and relating back to the date of filing of the filing of the Complaint and/or, at worse, to December 4, 2007 the date promised by the Cook County, IL, Sheriff's Department's personnel as previously attested to [Doc. 4 and Doc. 5] and stated herein by Plaintiff.

26. Defendants, *in lieu* of filing an Answer or Defenses, filed their instant *Motion and Request*. [Doc. 6]

*Page 6 of 36*

27. On or about January 18, 2008, Plaintiff filed a motion for an expansion of time to respond to Defendants' Motion and Request up to and through February 4, 2008 [Doc. 8] ("First Motion").

28. On or about January 20, 2008, Plaintiff filed a motion to amend his complaint [Doc. 9] ("Second Motion").

29. Plaintiff's First Motion and Second Motion are still pending before this Court and Plaintiff incorporates both motions by reference herein.

30. In order to fully respond to Defendants' Motion and Request, Plaintiff has requested that he be allowed to use and cite to his Amended Complaint [Doc. 9] and, in anticipation of this Court's granting of that request, Plaintiff's Complaint, as amended, will be used his *Response*.

31. Plaintiff's Complaint, as amended, specifically addresses Defendants' contentions relating to and concerning subject matter jurisdiction and diversity where it stated:

    "Plaintiff adds the following paragraphs 101 and 102 to his original Complaint.

    101. Over and above the aforementioned *Special Damages*, Defendants are liable to Plaintiff for, in part, additional damages, to wit: $170,230.00, at minimum, as follows:

        a. Treble RICO and Punitive damages for theft by deceit and theft by conversion and illegal and illicit fraud for 97 occurrences relating to and/or concerning *inflated trip fees* as outlined herein in an amount, at minimum of $1,000.00 in punitive damages per occurrence

or $97,000 plus $22,230 treble RICO damages (sub total of <u>$119,230.00</u>).

b.  Treble RICO and Punitive damages for theft by deceit and theft by conversion and illegal and illicit fraud for 97 occurrences relating to and/or concerning *weekly phantom charges* as outlined herein in an amount, at minimum of $1,000.00 in punitive damages per occurrence or $44,000 plus $7,500 treble RICO damages (sub total of <u>$51,500.00</u>).

c.  Thus, Defendants are liable to Plaintiff for treble RICO damages of <u>$29,730.00</u>, at minimum, and for punitive damages of <u>$141,000.00</u>, at minimum, for a total of at least <u>$170,230.00</u> in additional damages.

102. Defendants are liable to Plaintiff for, at a minimum, *Special damages* ($58,910.00), *treble RICO damages* ($29,730.00) and *punitive damages* ($141,000.00) for an aggregate amount of: **TWO HUNDRED, THIRTY THOUSAND, SIX HUNDRED, FORTY & 00/100ths (<u>$230,640.00</u>) DOLLARS.**"

<u>See</u>, [Doc. 9, attached, proposed *Amended Complaint*].

32. Thus, Plaintiff's Complaint, as amended, has cured the matter of a minimum of $75,000.00 (actual, minimum, damages prayed for by Plaintiff are **TWO HUNDRED, THIRTY THOUSAND, SIX HUNDRED, FORTY & 00/100ths (<u>$230,640.00</u>) DOLLARS**)as a well over the subject jurisdictional/diversity requirements.

33. Further, in his Complaint, as amended, Plaintiff's prayers for relief added to the above damages:

specific damages "<u>plus</u> compensatory, consequential and additional punitive damages, reasonable attorney fees and costs of litigation, additional treble RICO

damages, stubbornly litigious damages in an amount as awarded by a fair and impartial jury and that this Court award Plaintiff such further _and_ other relief against these Defendants as this Court deems fair, just and/or equitable." [Docs. 9/14, 12/15: attached, proposed _Amended Complaints_]

34. Finally, Plaintiff in his Amended Complaint [Docs. 1, 14 and 15] specifically set out his theory as to venue and Plaintiff clearly addressed the _VENUE_ issue raised in Defendants' _Motion and Request_ as follows:

_VENUE_

Initial Remarks:

Plaintiff's Affidavit (and verification) is attached hereto and incorporated by reference herein.

Plaintiff has chosen this venue for his claims against these Defendants, as is his right, and, more specifically, because he, by law, has that right especially under the federal _Diversity_ provisions [section 1332] and the facts surrounding his claims against these Defendants' for their illicit and/or illegal acts and omissions directed at him, the Defendants' contacts with Georgia (using and benefitting from the laws of Georgia and the protections afforded to them by said laws), as also provided, in part, by the Georgia Long-Arm Statute[1] and Defendants tortuous acts

---

[1] Under, in part, the Georgia _Long arm Statute_ personal jurisdiction of these Defendants is proper:

A court of this state may exercise personal jurisdiction over any nonresident ..., as to a cause of action arising from any of the acts, omissions ... enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:

directed at Plaintiff, a Georgia resident and the 48 incidents of "entry into Georgia" by Defendants, as brokers for subject loads outlined in Plaintiff's attached and incorporated Affidavit (and verification) to further their criminal and/or tortuous fraud, their schemes, their illicit and/or illegal activities and omissions, their racketeering activities and enterprise (Defendants under, in part, Georgia RICO, are and enterprise and should be consider as such by this Court).

3.    Venue is proper in this Court, in part, as indicated in the *Initial Remarks* above, as sworn to by Plaintiff in his attached and incorporated Affidavit (and verification), as indicated in Plaintiff's Response to Defendants' *Motion and Request* (which is incorporated by reference herein) and, at all times relevant hereto, Plaintiff resided (and still resides) and his business location was (and still is) within this Court's judicial district and within the physical boundaries of the Atlanta Division thereof (note: at all times relevant hereto, Plaintiff works, and still works, out of his home in Snellville, Georgia when not on the road delivering or picking up loads). Thus, venue is proper in this Court and this case should remain with this Court.

(Emphasis Supplied) [Doc. 15].

35.  For the within reasons, this Court should DENY Defendants'

Motion and Request and GRANT all of the relief Plaintiff

---

(1) Transacts <u>any</u> business within this state; [or]

(2) Commits a <u>tortious act or omission within this state</u>; ... [or]

(3) <u>Commits a tortious injury in this state caused by an act or omission outside this state</u> if the tort-feasor regularly does or solicits business, <u>or engages in any other persistent course of conduct, or derives substantial revenue from</u> goods used or consumed or services rendered in this state; ...

(Emphasis Supplied) O.C.G.A. § 9-10-91.

requests.

*ARGUMENT AND CITATION TO AUTHORITY*

I.   **Preliminary Argument**:

Because Defendants have filed subject motion to dismiss, this Court must accept as true the factual allegations in Plaintiff's Complaint, as twice-amended [Docs. 1, 14 and 15]. See, *e.g.*, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164, (113 S.Ct. 1160) (1993).

This Court is reminded that Defendants have not been prejudiced by the late service in this case-service was actually effected seven days after the 120-day limit expired, the case is still in its early stages, and Plaintiff has served Defendants with copies of all of his filings since December 12, 2007.  In addition, a dismissal pursuant to Rule 12(b)(5) would be without prejudice. See, *e.g.*, Fed.R.Civ.P. 4(m) (stating that dismissal for failure to serve within the 120-day period is without prejudice). As dismissal of Plaintiff's complaint would only lead to Plaintiff refiling the instant case, judicial economy would be best served by denying Defendants' motion to dismiss.

II.   **PLAINTIFF'S COMPLAINT, AS AMENDED, IS PROPERLY BEFORE THIS COURT**:

Plaintiff will cite to his Complaint, as twice-amended [Docs. 1, 14 and 15] (hereinafter, "Amended Complaint"), because, in part, he is quite certain that this Court will allow said

amendments as this Court has the inherent and equitable power to control matters before it and as a nine (9) business day delay will not prejudice Defendants, this Court is authorized to grant Plaintiff's request for the additional time.

The Eleventh Circuit has determined that such amendments must be liberally granted unless there is severe, undue prejudice to Defendants.

> After a responsive pleading has been filed, subsequent amendments are permissible only with leave of court, which "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). This liberal policy of allowing amendments under Rule 15(a) "circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Shipner*, 868 F.2d at 407; *see also Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir.1993) (holding that "a justifying reason *must be apparent* for denial of a motion to amend") (emphasis added).

Motorcity of Jacksonville, Ltd. By and Through Motorcity of Jacksonville, Inc. v. Southeast Bank, N.A., 83 F.3d 1317 (C.A.11 (Fla.),1996) *reversed, in part, on other grounds*, Hess v. F.D.I.C., 519 U.S. 1087 (117 S.Ct. 760) (136 L.Ed.2d 708) (65 USLW 3500) (65 USLW 3505) (U.S. Jan 21, 1997) (NO. 96-106).

As there is <u>no</u> prejudice whatsoever to Defendants if this Court allows Plaintiff to amend, clarify and/or otherwise supplement his original Complaint (Plaintiff's "Second Motion"), this Court must allow Plaintiff such leave to amend.

Said *Amended Complaint* is incorporated by reference herein.

**A.    SERVICE UPON DEFENDANTS WAS NOT DEFECTIVE PURSUANT TO FED.R.CIV.P. 12(B)(4-5) AND/OR FED.R.CIV.P. 4(K AND M)**

**AS EVIDENCED BY SUCH RULES THEMSELVES AND/OR CASE LAW OPPOSING SUCH DRACONIAN DISMISSALS AND PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION AND REQUEST**

Defendants, inexplicably rely upon the "older, stricter" version of Rule 4, which, at the time, provided the following:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). Plaintiff has show good cause, but he need not do so and, pursuant to case law cited below, this Court must allow the Complaint, as amended, and service upon Defendants to relate back, as indicated herein.

Further, Defendants seem to rely upon another outdated provision of the Rules, to wit: "(j) Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant...."

*Page 13 of  36*

Fed. Rule Civ. Proc. 4(j) (1988).

Notwithstanding Defendants' apparent argument, in effect, to the contrary, this Court must address the Rules as they are amended. Therefore, reading Rule 4 in its historical context, this Court can only conclude (as did the Eleventh Circuit as argued below) that the 120-day provision operates not as an outer limit subject to reduction, but as an irreducible allowance.

In fact, prior to 1983, Rule 4 contained no time limit for service. Until the changes installed that year, United States marshals attended to service.

The 1983 Rule 4 changes:

completed a shift in responsibility for service from the United States marshals to the plaintiff. See *Mullenix*, Hope Over Experience: Mandatory Informal Discovery and the Politics of Rulemaking, 69 N.C.L.Rev. 795, 845 (1991). With marshals no longer available as routine process servers, the Judicial Conference considered a time control necessary; the Conference proposed, and this Court approved, 120 days from the filing of the complaint as the appropriate limit. Congress relaxed the rule change by authorizing an extension of the 120-day period if the party responsible for service showed "good cause." See *supra,* at 1642-1643; 128 Cong. Rec. 30931-30932 (1982), reprinted in 28 U.S.C.App., p. 647.

Most recently, in 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120-day period "even if there is no good cause shown." See Advisory Committee's Notes on Fed. Rule Civ. Proc. 4, 28 U.S.C.App., p. 654. And tellingly, the text of Rule 4 sets out, as "[a] specific instance of good cause," *ibid.,* allowance of "a reasonable time" to "cur[e] the failure to serve multiple officers ... of the United States if the plaintiff has effected service on either the United States attorney or the Attorney General" within the prescribed 120 days. Fed. Rule Civ. Proc. 4(i)(3).

Rule 4(m), captioned "Time Limit for Service," currently provides:

"If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant *or direct that service be effected within a specified time;* provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period...." (Emphasis added.)

The Federal Rules thus convey a clear message: **Complaints are not to be dismissed if served within 120 days, or within such additional time as the court may allow.**

(Emphasis Supplied)  <u>Henderson v. U.S.</u>, 517 U.S. 654 (116 S.Ct. 1638) (U.S. (Tex.),1996).

Although Defendants would have this Court rely upon the fact that "[s]ervice of process is a jurisdictional requirement: [and that this] court lacks jurisdiction over [Defendants as they had] not been served [within 120 days of filing of Plaintiff's complaint]."[2] In this case, however, Defendants were duly and properly served by the Cook County, IL, Sheriff's office on December 12, 2007.

Defendants also present a cacophony of reasons why Defendants were improperly and, again, untimely served.

Rule 4(c)(2) provides, in relevant part that, "[s]ervice may be effected by any person who is not a party and who is at least

---

[2]*Pardazi v. Cullman Med. Ctr.,* 896 F.2d 1313, 1317 (11th Cir.1990), <u>see</u>, also, Thomas v. Box 231 Fed.Appx. 858, 2007 WL 1266055 (C.A.11 (Fla. (C.A.11 (Fla.),2007)

18 years of age." Fed.R.Civ.P. 4(c)(2). Additionally, Rule 4(e) provides that service may be effected upon an individual: "(1) pursuant to the law of the state in which the district court is located ...; or (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house ... or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Fed.R.Civ.P. 4(e).

Furthermore, Illinois law provides that process may be served by the county sheriff in which defendants are located, 735 ILCS 5/2-202, 5/2-203, 5/2-204 and/or 5/2-205; Defendants were personally served by said sheriff's deputy, as evidenced by Plaintiff [Doc. 3, 4, etc.].

Defendants fail to address, or even acknowledge that the standards for proper service as set forth in Federal Rule of Civil Procedure 4 are incorporated into Rule 12(b)(5). See, 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed.2004); see Lilly v. Winter, No. 1:05cv879, 2006 WL 543977, at *1 (E.D.Va. March 3, 2006) (incorporating the Rule 4(m) time limit into a Rule 12(b)(5) analysis).

There is no doubt that Rule 4(m), as amended, states that, "if the plaintiff shows good cause for the failure [to effect

service within 120 days after the filing of the complaint], the court shall extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m).[3]

But, as ruled by both the United States Supreme Court and the Eleventh Circuit Court of Appeals Plaintiff need not even show that.

First:  The United States Supreme Court stated that "courts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown, " Henderson, at 662-63 (quoting Fed.R.Civ.P. 4 advisory committee's note).  Thus, it follows that **"[c]omplaints are _NOT_ to be dismissed if served within 120 days _OR_ within such additional time as the court may allow."**[4]

Second: The Eleventh Circuit has relied on the Advisory Committee's Notes on Rule 4, in which the Committee noted that the 1993 amendment to the rule "authorizes the court to relieve a

_____

[3]Rule 12(b)(5) provides that "[e]very defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto ... except that the following defenses may at the option of the pleader be made by motion: ... (5) insufficiency of service of process...." See Fed.R.Civ.P. 12(b)(5); and the former Rule 4(j) provided: If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. See Fed.R.Civ.P. 4(j) (1992).

[4] (Emphasis Supplied) Horenkamp v. Van Winkle & Co., Inc., 402 F.3d 1129, 1132, quoting Henderson, 517 U.S. 654, 663 (1996).

plaintiff of the consequences of an application of this

subsection even if there is no good cause shown."[5]

**B.    PLAINTIFF'S COMPLAINT, AS AMENDED, MEETS THE MINIMUM SUBJECT MATTER JURISDICTION REQUIREMENT OF $75,000.00**

Plaintiff's Amended Complaint specifically addresses

Defendants' contentions relating to and concerning subject matter

jurisdiction and diversity under Section 1332 where it stated:

Plaintiff adds the following paragraphs 101 and 102
to his original Complaint.

101.  Over and above the aforementioned *Special Damages*,
Defendants are liable to Plaintiff for, in part,
additional damages, to wit: $170,230.00, at
minimum, as follows:

a.    Treble RICO and Punitive damages for theft by
deceit and theft by conversion and illegal and
illicit fraud for 97 occurrences relating to
and/or concerning *inflated trip fees* as
outlined herein in an amount, at minimum of
$1,000.00 in punitive damages per occurrence
or $97,000 plus $22,230 treble RICO damages
(sub total of $119,230.00).

b.    Treble RICO and Punitive damages for theft by
deceit and theft by conversion and illegal and
illicit fraud for 97 occurrences relating to
and/or concerning *weekly phantom charges* as
outlined herein in an amount, at minimum of
$1,000.00 in punitive damages per occurrence
or $44,000 plus $7,500 treble RICO damages
(sub total of $51,500.00).

c.    Thus, Defendants are liable to Plaintiff for
treble RICO damages of $29,730.00, at minimum,
and for punitive damages of $141,000.00, at
minimum, for a total of at least $170,230.00

---

[5]*See* Horenkamp, 402 F.3d at 1132 (citing Fed.R.Civ.P. 4(m),
Advisory Committee Note, 1993 Amendments); Anderson v. Osh Kosh
B'Gosh, 2006 WL 940660 (C.A.11 (Ga. (C.A.11 (Ga.),2006).

in additional damages.

102. Defendants are liable to Plaintiff for, at a minimum, *Special damages* ($58,910.00), *treble RICO damages* ($29,730.00) and *punitive damages* ($141,000.00) for an aggregate amount of: **TWO HUNDRED, THIRTY THOUSAND, SIX HUNDRED, FORTY & 00/100ths (_$230,640.00_) DOLLARS.**"

<u>See</u>, [Doc. 9/14 and 12/15,... proposed *Amended Complaints*].

Thus, this Court must deny Defendants' *Motion and Request* as it relates to and/or concerns jurisdiction under, in part, 28 U.S.C.A. § 1331 (federal question) and/or subject matter jurisdiction under, in part, 28 U.S.C.A. § 1332(diversity).[6]

**C.  <u>THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS</u>**

As Defendants' argument seems to confuse jurisdiction and territorial limits as they relate to Fed.R.Civ.P. 4(k), as amended in 1993, Plaintiff will address *Rule 4* also below.

Plaintiff's Amended Complaint [Docs. 1, 14 and 15] bases this Court's personal jurisdiction over Defendants, not on Plaintiff's residence here in Georgia alone, but, in part, on Defendants acts and omissions affecting Plaintiff, a Georgia resident, <u>and/or</u> Defendants' contacts with Georgia during the commission of and/or furtherance of said egregious acts, their schemes, RICO activities, racketeering activities, nefarious activities, and the like.

The Advisory Committee/Commentaries on Rule 4(k) state:

---

[6]  <u>see</u>, for example, <u>Daniels v. Daniels</u>, 162 Fed.Appx. 288, 206 WL 39252 (C.A. 5 (Tex) 2006).

**SUPPLEMENTARY PRACTICE COMMENTARIES**
*by David D. Siegel*
**COMMENTARIES SUPERSEDE THOSE IN MAIN VOLUME**

The complete overhaul of Rule 4 that took effect on December 1, 1993, made it impractical to retain the Commentaries in the main volume, where they run from page 85 to page 192. Rather than put the reader to the burden of determining which segments of them remain relevant after the 1993 revision, the entirety of the Commentaries have been done afresh to go with the revised Rule 4. The Commentaries that appear below are therefore a thorough statement on the new rule and are independent of the Commentaries in the main volume, which need not be consulted. The Commentaries cover all of the revised rule, moreover, and not just the parts of it that are new. The new parts may of course come in for more extended treatment.

*   *   *

C4–2. Personal Jurisdiction: An Overview of Rule 4.

*   *   *

Subdivision (k) prescribes the geographical area within which the summons may be served, carrying out the function that subdivisions (e) and (f) of the old rule had carried out together. The provision adopting state bases for extraterritorial jurisdiction, ever so frequently invoked, which used to be in subdivision (e), is now in subdivision (k)(1)(A). The so-called 100–mile-bulge provision of former subdivision (f) will now be found in subdivision (k)(1)(B). The provision referring to federal laws that allow nationwide service, previously the first sentence of old subdivision (e), is now covered by paragraphs (C) and (D) of subdivision (k)(1).

The provision that made the state the basic geographical unit for summons service in a federal action, which had been part of subdivision (f) under the old rule, has been dropped, the new rule apparently relying on state law to do that job under the adoptive provision of subdivision (K)(1)(A).

(Emphasis Supplied) Federal Rules of Civil Procedure Rule 4.

In fact, Rule 4(k) is not applicable here and Defendants confuse that subsection with 4(e)(1) and 4(h)(1) as outlined in the Advisory Committee Commentaries:

**Service by State Law Method Should Be Made Within Federal 120-Day Time Limit**

Even if the plaintiff is using a state method of service, as allowed by subdivisions (e)(1) and (h)(1), **the plaintiff should of course do <u>everything</u> possible to see that it is carried out within the 120-day time limit imposed on summons service by subdivision (m) of Rule 4**. On this point, see, for example, <u>Coutinho, Caro & Co. v. Federal Pacifica Liberia Ltd.</u>, 127 F.R.D. 150 (ND Ill. 1989).

(Emphasis Supplied) Federal Rules of Civil Procedure Rule 4.

The comment, *"the plaintiff should of course do everything possible to see that it is carried out within the 120-day time limit imposed on summons service by subdivision (m) of Rule 4,"* comports with the holdings of the United States Supreme Court in the <u>Henderson</u> case cited in footnote 3 above, with the Eleventh Circuit in the <u>Horenkamp</u> case cited in footnotes 3 and 4 above and with the Eleventh Circuit in the <u>Anderson v. Osh Kosh B'Gosh</u> case cited in footnote 4 above.

Defendants were served according to the requirements and laws of Illinois, their resident-State. <u>See</u>, *i.e.*, 735 ILCS 5/2-202, 5/2-203, 5/2-204 and/or 5/2-205. "Generally process may be served in a manner which is reasonably calculated to give a party actual notice of the suit instituted against it. Hoffman Motors Corp. v. Alfa Romeo S.p.A., 244 F.Supp. 70, 80 (S.D.N.Y.1965). Service [on these Defendants] here comported entirely with the policy which underpins Rule 4 and which is reflected in that Rule's formal requirements." <u>Call Carl, Inc. v. BP Oil Corp.</u>,

391 F.Supp. 367 (D.C.Md. 1975).

"Defendants ... challenge Plaintiff's complaint on jurisdictional grounds. ... [and appear to] argue that they have insufficient contacts with [Georgia] to justify this court's exercise of personal jurisdiction over them.  The service of process rules of the state where the district court sits [Georgia] govern personal jurisdiction issues." *Bane v. Netlink, Inc.,* 925 F.2d 637, 639 (3d Cir.1991) and Fed.R.Civ.P. 4(e).

The [Georgia] Long-Arm Statute[7] permits state courts to exercise *in personam* jurisdiction to the fullest extent allowed under the Constitution of the United States and to be based on the most minimum contact with this Commonwealth allowed under the

---

[7]     Under, in part, the Georgia *Long arm Statute* personal jurisdiction of these Defendants is proper:

> A court of this state may exercise personal jurisdiction over any nonresident ..., as to a cause of action arising from any of the acts, omissions ... enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
> (1) Transacts any business within this state; [or]
>
> (2) Commits a tortious act or omission within this state; ... [or]
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; ...

(Emphasis Supplied) O.C.G.A. § 9-10-91.

Constitution of the United States.  See, O.C.G.A. § 9-10-91.

The principal inquiry is, then, whether the exercise of jurisdiction over these Defendants is constitutionally proper; which it is as further explained below.

Personal jurisdiction of these Defendants may be based either on the conduct of these non-resident Defendants (one or both of them) which gave rise to the cause of action (**specific jurisdiction**), or on either or both Defendant's general contacts with Georgia, provided those contacts were "continuous and systematic", (**general jurisdiction**). *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 473 n. 15, 105 S.Ct. 2174, 2182, 2182 n. 15, 85 L.Ed.2d 528 (1985) and *Helicopteros Nacionales de Colombia, S.A. v. Hall, (Hall),* 466 U.S. 408, 414 n. 8 and 9, 104 S.Ct. 1868, 1872 n. 8 and 9, 80 L.Ed.2d 404 (1984).

General Jurisdiction:

Defendants allege that they are only subject to the *General Jurisdiction* of this Court, if at all.  In effect, they are arguing that if the general jurisdiction exists at all there were sufficient contacts to justify an assertion of 'personal jurisdiction over [them] in a suit not arising out of or related to [their] contacts with [Georgia,] the forum.' " *Covenant Bank for Savings v. Cohen,* 806 F.Supp. 52, 55 (D.N.J.1992), quoting *Hall, supra,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. They appear, because their motion is vague as to this point, at best,

to allege that their alleged "minimum contacts" are not enough to establish general jurisdiction but, as Plaintiff alleges in his Complaint, as amended, Defendants' "contacts to [Georgia were] continuous and substantial." *Provident National Bank v. California Federal Savings & Loan Association,* 819 F.2d 434, 437 (3d Cir.1987). Accord: *Hall, supra,* 466 U.S. at 415–16, 104 S.Ct. at 1872–73.

Specific Jurisdiction:

Defendants fail to address this Court's personal jurisdiction of them through the specific jurisdiction provision due to Defendants' "purposefully directing activity toward the forum state [Georgia]," *Applied Biosystems, Inc., v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1470 (D.Del.1991), such that [they, individually and/or together] could 'reasonably anticipate being haled into court there,' *Burger King, supra,* 471 U.S. at 474, 105 S.Ct. at 2183; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) and *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239 (1958). Plaintiff's allegations in his Complaint, as amended and relied upon proof that these Defendants have "purposefully directed" their activities at him, a resident of Georgia, the forum state, "deliberately engaged" in "significant activities" in Georgia, and/or created "continuing obligations" with Plaintiff, a Georgia resident, establishes personal jurisdiction over these defendants

in litigation arising out of such egregious, racketeering, fraudulent and nefarious activities as alleged in Plaintiff's *Amended Complaint*. *Burger King, supra,* 471 U.S. at 475-76, 105 S.Ct. at 2183-84 (Citations omitted.)" <u>See</u>, *e.g.*, <u>Violanti v. Emery Worldwide A-CF Co.</u>, 847 F.Supp. 1251 (M.D.Pa.,1994).

Defendants do not appear to deny that at least minimum contacts exist. Thus, this court must consider whether its exercise of personal jurisdiction over the Defendants "accords with the notions of 'fair play and substantial justice.' " *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 481 (3d Cir.1993), citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945).

The Defendants have failed to carry the burden of showing that such is not the case under the factors relevant to that determination are:

    1)   the interests of the forum state;

    2)   the plaintiff's interest in obtaining relief; and,

    3)   the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 4) the shared interest of the several States in furthering fundamental substantive social policies.

*Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 701 (3d Cir.1990), citing *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032 (1987).

This Court, in making this determination, if the requisite minimum contacts have been established, the interests of the Plaintiff and Georgia, the forum state, in the exercise of jurisdiction may "'justify even the serious burdens placed on the alien defendant. *Grand Entertainment Group,* 988 F.2d at 483." <u>Id</u>.

Having the burden of proof, Defendants have not sufficiently proven their challenges to personal jurisdiction; even if they had, Plaintiff has met his burden of proving that jurisdiction of these Defendants is proper given Plaintiff's federal claims, RICO, mail fraud, wire fraud, and "other competent evidence," *North Penn Gas Co. v. Corning Natural Gas Corp., per curiam,* 897 F.2d 687, 689 (3d Cir.), *cert. denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990). Plaintiff has also met his burden of proving that jurisdiction of these Defendants is proper, in part, under the Georgia Long-Arm Statute and aforementioned federal law, Sections 1331 and 1332.[8]

### D.    <u>**VENUE IS PROPER IN THIS COURT**</u>

Plaintiff's Complaint, as amended, bases venue in this Court, not only on Plaintiff's residence here in Georgia, but on, in part, the Georgia Long-Arm Statute[9], Defendants' acts and

---

[8] <u>See</u>, *e.g.*, Plaintiff's Second Amended Complaint [Doc. 15].

[9] Under, in part, the Georgia *Long arm Statute* venue in this Court and personal jurisdiction over Defendants is proper:

> <u>A court of this state may exercise personal jurisdiction over any nonresident</u> ..., <u>as to a cause of action arising</u>

omissions and conspiracies to commit or omit same, done
individually and/or in concert with each other or others,
affecting Plaintiff, a Georgia resident, <u>and/or</u> Defendants'
contacts with Georgia during the commission of and/or furtherance
of said egregious acts, their schemes, RICO activities,
racketeering activities, nefarious activities, and the like as
outlined in Plaintiff's Second Amended Complaint [Doc. 15].[10]

---

<u>from any of the acts, omissions</u> ... enumerated in this
Code section, <u>in the same manner</u> <u>as if he were a resident</u>
<u>of the state</u>, <u>if</u> in person or through an agent, <u>he</u>:

(1) Transacts <u>any</u> business within this state; [or]

(2) Commits a <u>tortious act or omission within this state</u>;
... [or]

(3) <u>Commits a tortious injury in this state caused by an</u>
<u>act or omission outside this state</u> if the tort-feasor
regularly does or solicits business, <u>or engages in any</u>
<u>other persistent course of conduct, or derives</u>
<u>substantial revenue from</u> goods used or consumed or
<u>services rendered in this state</u>; ...

(Emphasis Supplied) O.C.G.A. § 9-10-91.

[10]

*VENUE*

<u>Initial Remarks</u>:

Plaintiff's Affidavit (and verification) is attached hereto
and incorporated by reference herein.

Plaintiff has chosen this venue for his claims against these
Defendants, as is his right, and, more specifically, because he, by
law, has that right especially under the federal *Diversity*
provisions [section 1332] and the facts surrounding his claims
against these Defendants' for their illicit and/or illegal acts and
omissions directed at him, the Defendants' contacts with Georgia
(using and benefitting from the laws of Georgia and the protections
afforded to them by said laws), as also provided, in part, by the
Georgia Long-Arm Statute and Defendants tortuous acts directed at

A.  **THERE IS NO REASON TO DISMISS THIS CASE BASED UPON** *FORUM NON CONVENIENS* **OR ON ANY OTHER GROUNDS**

Defendants, with all of the *CHUTZPAH* they can muster, cry *forum non conveniens* because to have this case tried before this Court would be, to paraphrase, **oppressive and vexatious to them out of all portion to Plaintiff's convenience or chosen forum.** These same Defendants have nearly destroyed Plaintiff with their egregious acts, racketeering activities, nefarious schemes and yet seek this Court's equitable powers where their "hands are black as coal from the fires of *hell*." Their prays go beyond *Chutzpah*, they border on arrogance and total disregard to any

---

Plaintiff, a Georgia resident and the 48 incidents of "entry into Georgia" by Defendants, as brokers for subject loads outlined in Plaintiff's attached and incorporated Affidavit (and verification) to further their criminal and/or tortuous fraud, their

schemes, their illicit and/or illegal activities and omissions, their racketeering activities and enterprise (Defendants under, in part, Georgia RICO, are and enterprise and should be consider as such by this Court). *(continued below)*

3.  Venue is proper in this Court, in part, as indicated in the *Initial Remarks* above, as sworn to by Plaintiff in his attached and incorporated Affidavit (and verification), as indicated in Plaintiff's Response to Defendants' *Motion and Request* (which is incorporated by reference herein) and, at all times relevant hereto, Plaintiff resided (and still resides) and his business location was (and still is) within this Court's judicial district and within the physical boundaries of the Atlanta Division thereof (note: at all times relevant hereto, Plaintiff works, and still works, out of his home in Snellville, Georgia when not on the road delivering or picking up loads). Thus, venue is proper in this Court and this case should remain with this Court.

(Emphasis Supplied) [Doc. 15].

decency or remorse.  Defendants purposefully and consciously reached their tentacles into Georgia to injure Plaintiff, they used Georgia's laws to protect them and to hide their illicit, illegal and nefarious activities and now they want this Court to shield them from having to "face the music" here in Georgia.

The United States Supreme Court has clearly mandated that: unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. ...  Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.

There is a local interest in having localized controversies decided at home.

There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in

conflict of laws, and in law foreign to itself.
(Emphasis Supplied)  Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (67
S.Ct. 839) (1947), *superceded by statute on other grounds,* as
mentioned in Pergo v. Shaw Industries, 2003 WL 24129779 (N.D.
Ga., 1:03–cv–1709–BBM) (Sept. 16, 2003).

This Court, in the Pergo case, clearly enunciated the rules
laid down by the U.S. Supreme Court in Stewart Org., Inc. v.
Ricoh Corp., 487 U.S. 22 (1988) where it pointed out that:
"In considering a motion to transfer under section 1404(a), the
burden is on the moving party to establish the propriety of the
transfer.  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.
1989)." [**and most importantly, as in this case**] "Unless the
balance IS STRONGLY IN FAVOR of [Defendants], the Plaintiff's
choice of forum should NOT be disturbed. *Robinson v. Giamarco &*
*Bill, P.C.,* 74 F.Supp. 253, 260 (11th Cir. 1996)." See, also,
Bell v. K-Mart Corp., 848 F.Supp. 996 (N.D.Ga. 1994) (Carnes, J.)
"Transfer should be DENIED if it would [as would be the case,
here] merely shift inconvenience from one party to another. Id.
at 998." Pergo v. Shaw Industries, 2003 WL 24129779 (N.D. Ga.,
1:03–cv–1709–BBM) (Sept. 16, 2003).

Thus, Georgia is the State whose laws have been violated and
whose citizen (Plaintiff) has been harmed by the illegal and
illicit and nefarious activities and schemes of these Defendants.

To allow these Defendants, after what they did to Plaintiff

and put him and his family through, to have this case transferred
to Chicago, IL would be a travesty of justice and would cause
Plaintiff untold financial burden and would, in effect, further
Defendants' schemes to injure and damage Plaintiff and deplete
his already limited resources (for which they are "mostly" at
fault).

The United State Supreme Court held that:

> where in this type of litigation only a money judgment is
> sought, the case normally is different. The fact that the
> claim involves complicated affairs of a foreign
> corporation is not alone a sufficient reason for a
> federal court to decline to decide it.[11] The same may be
> true even where an injunction is sought.[12]

Williams v. Green Bay & W.R. Co. 326 U.S. 549 (66 S.Ct. 284)
(1946).

---

[11] *American Seating Co. v. Bullard*, 6 Cir., 290 F. 896, 901,
where stockholders of a New Jersey corporation, who did not
consent to the sale of its assets pursuant to a plan of
reorganization and refinancing, sued in the federal court in
Michigan to recover the value of their stock; *United Milk
Products Corp. v. Lovell*, 6 Cir., 75 F.2d 923 (semble); National
Lock Co. v. Hogland, 7 Cir., 101 F.2d 576 (semble); *Overfield v.
Pennroad Corp.*, 3 Cir., 113 F.2d 6, where stockholders brought a
derivative action in the federal court in Pennsylvania to recover
for wrongs done their company, a Delaware corporation, by a
Pennsylvania company; *Williamson v. Missouri-Kansas Pipe Line
Co.*, *supra*, (semble). Cf. *Kelley v. American Sugar Refining Co.*,
1 Cir., 139 F.2d 76.

[12] *Harr v. Pioneer Mechanical Corp.*, 2 Cir., 65 F.2d 332,
where stockholders of a Delaware corporation sued in the federal
court in New York to enjoin the sale of stock on the
representation that it had priority over the shares held by
plaintiffs; *American Creosote Works v. Powell*, 5 Cir., 298 F.
417, where stockholders of a Maryland corporation sued in the
federal court in Louisiana to annul and cancel the issuance of
certain stock.

**F.**    **DEFENDANTS SHOULD NOT BE AWARDED ATTORNEY'S FEES AND COSTS OF LITIGATION UNDER ANY THEORY OF STATE OR FEDERAL LAW**

It is curious, the tempest unleashed by Defendants in their bare bones argument for dismissal of Plaintiff's complaint on *forum non conveniens* grounds becomes mysterious still, here, when these same Defendants want the laws and protections of Georgia, the true forum state, to mete out more injury to Plaintiff as attorney's fees and costs of litigation under **GEORGIA CODE SECTION 9-15-14(b)** and even cite to a federal case in **GEORGIA!**

There is not basis for their request for attorney's fees and costs of litigation; in fact, Defendants are the ones being "stubbornly litigious" and are again putting Plaintiff to "unnecessary trouble and expense" and it is Defendants who, throughout these incidents, to date, have acted, to put it mildly, "in bad faith."  Here Plaintiff has expended extensive time, energy, resources and further depleted his limited resources defending Defendants' frivolous *Motion and Request*.

Because Defendants have filed subject motion to dismiss, this Court must accept as true the factual allegations in Plaintiff's Complaint, as twice-amended [Docs. 1, 14 and 15]. See, *e.g.*, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164, (113 S.Ct. 1160) (1993). Taken as such, Plaintiff has withstood all of Defendants' issues in their *Motion and Request*, especially as Defendants have

not initiated any discovery, have filed no affidavits, have not presented any evidence, for the most part, just mere speculation and baseless conclusions (which are NOT evidence), have not presented this Court with a list of "other" documentary evidence housed in Chicago, IL which would not be able to be copied and mailed to Plaintiff and/or this Court (as would all-Georgia parties have to do in this Court), have not presented a list of "Chicago, IL" witnesses to refute Plaintiff's claims or support their defenses to same (whatever they are-Defendants have not even filed an Answer yet) and have not supplied this Court with sufficient reason to dismiss and/or transfer this matter (nor any legitimate, verifiable, non-litigious material facts supporting their *Motion and Request*).

Under Georgia law, questions concerning Georgia Code Section 9-15-14(b) attorney's fees and costs of litigation for, in part, "unnecessary trouble and expense," are, for the most part for the jury to decide as are questions concerning the existence of a *bona fide* controversy.[13]

Defendants have failed to show why there is no *bona fide* controversy between the parties, especially given Plaintiff's

---

[13]    See, *i.e.*, *Patton v. Turnage*, 260 Ga. App. 744, 580 S.E.2d 604 (2003); *Jones v. Ceniza*, 257 Ga. App. 806, 572 S.E.2d 362 (2002); *Buckley v. Turner Heritage Homes, Inc.*, 248 Ga. App. 793, 547 S.E.2d 373 (2001); Perimeter *Realty v. GAPI, Inc.*, 243 Ga. App. 584, 533 S.E.2d 136 (2000); *Garrett v. Women's Health Care of Gwinnett, P.C.*, 243 Ga. App. 53, 532 S.E.2d 164 (2000).

Amended Complaints, his Affidavit and verification and his
Certifications of Service upon Defendants and his explanations of
the legitimate reasons for any delay and that there is no
prejudice to these Defendants (in fact, there are the ones
causing this delay and excessive trouble and expense for
Plaintiff who is only seeking justice and his day in Court).

Summary;

Under Georgia and federal law, Defendants have the burden of
proof on all issues in their *Motion and Request*; a rather high
burden, we believe, given Plaintiff's unrefuted claims, the facts
surrounding the issues presented by Defendants in this case,
Plaintiff's Amended Complaints and< in part, his affidavit and
verification and the case law guiding this Court in deciding on
Defendants' instant *Motion and Request*. The key here is that
Defendants have failed to show, under any theory, that there is
no *bona fide* controversy and without that showing Defendants'
*Motion and Request* fails[14]; and, without that showing by
Defendants, this Court is not authorized to dismiss Plaintiff's
case, transfer Plaintiff's case and/or award Defendants
attorney's fees and/or costs of litigation.

---

[14]  See, for example, *White v. Plumbing Distributors, Inc.*,
262 Ga. App. 228, 585 S.E.2d 135 (2003); *Patton v. Turnage*, 260
Ga. App. 744, 580 S.E.2d 604 (2003); *Graves v. Diambrose*, 243 Ga.
App. 802, 534 S.E.2d 490 (2000); *Plemons v. Weaver*, 243 Ga. App.
464, 533 S.E.2d 747 (2000); *Owens v. McGee & Oxford*, 238 Ga. App.
497, 518 S.E.2d 699 (1999); and their progeny.

WHEREFORE, Plaintiff prays that this Court DENY Defendants' Motion and Request and GRANT Plaintiff's First and Second Motions for, in part, the reasons stated herein, allow Plaintiff to use said Complaint, as amended, in his Response to Defendants' pending *Motion and Request* and for such other and further relief this Court deems fair, just and equitable.

Respectfully submitted,

This 4th day of February, 2008.

*VILLANI & ASSOCIATES, P.C.*

/s/ Ralph J. Villani
Ralph J. Villani
GA Bar No. 727700

2055-C Scenic Hwy., N.
Suite 404
Snellville, GA 30078-6167

(TEL)  (770) 985-6773
(FAX)  (770) 979-5190

(E/M)  law2001@bellsouth.net

COUNSEL FOR PLAINTIFF

<u>COMBINED CERTIFICATION OF COMPLIANCE AND CERTIFICATE OF SERVICE</u>

I certify that Plaintiff's within *RESPONSE* has been prepared in 12-point Courier New font and it complies with LR 5.1(B).

I further certify that I, this day, electronically filed Plaintiff's *RESPONSE* with the Clerk of this Court using the CM/EMF system which will automatically send E-mail notification of such filing to the following attorney of record:

Salmeh Fodor, Esq.   *skfodor@mklawllc.com*

Respectfully submitted,

This 4th day of February, 2008.

*VILLANI & ASSOCIATES, P.C.*


/s/ Ralph J. Villani
Ralph J. Villani
GA Bar No. 727700

2055-C Scenic Hwy., N.
Suite 404
Snellville, GA 30078-6167

(TEL)  (770) 985-6773
(FAX)  (770) 979-5190

(E/M)  law2001@bellsouth.net

COUNSEL FOR PLAINTIFF