

# ORIGINAL

# FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION (CHICAGO)

JUL 1 5 2008

Jul 15, 2008

Judge Suzanne B. Conlon
United States District Court

| | |
|---|---|
| FADIL DELKIC,<br>            Plaintiff, | )<br>)<br>)    NO.: <u>1:08-cv-03509-SBC</u> |
| | ) |
| vs. | )<br>) |
| | ) |
| VLADIMIR DJURDJEV,<br>Individually and/or d/b/a<br>UNITED CARGO, INC., d/b/a<br>MARUNTE TRUCKING, INC.,<br>d/b/a UNITED 2 LOGISTICS,<br>INC., and/or d/b/a JOHN DOE<br>COMPANY and/or JOHN DOE<br>CORPORATION, AND<br>BOJAN ("BOB") PANIC,<br>Individually and/or d/b/a<br>UNITED CARGO, INC., d/b/a<br>MARUNTE TRUCKING, INC.,<br>d/b/a UNITED 2 LOGISTICS,<br>INC., and/or d/b/a JOHN DOE<br>COMPANY and/or JOHN DOE<br>CORPORATION,<br>            Defendants. | )<br>)<br>)    *Hon. Suzanne B. Conlon, Presiding*<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    *RICO Case Statement*<br>) |

## PLAINTIFF'S RICO CASE STATEMENT

Plaintiff, in response to this Court's June 20, 2008 Order
requiring him to detail with specificity and present a RICO case
statement as a result of a reasonable inquiry by Plaintiff and
his counsel files his *RICO Case Statement* and shows this Court as
follows:

<u>Initial Remarks</u>:

Plaintiff incorporates the clerk's file in his *RICO Case
Statement* and, when referring to paragraphs of his <u>Complaint</u>,
Plaintiff is referring to specific paragraphs in his <u>Verified</u>

Amended Complaint [DOC # 26] unless otherwise indicated.

The term "Defendants" as used herein shall include Defendant Vladimir Djurdjev, Individually and/or d/b/a United Cargo, Inc., d/b/a Marunte Trucking, Inc., d/b/a United 2 Logistics, Inc., and/or d/b/a John Doe Company and/or John Doe Corporation ("Defendant Djurdjev") and Defendant Bojan ("Bob") Panic, Individually and/or d/b/a United Cargo, Inc., d/b/a Marunte Trucking, Inc., d/b/a United 2 Logistics, Inc., and/or d/b/a John Doe Company and/or John Doe Corporation ("Defendant Panic") (hereinafter, collectively referred to as "Defendants").

### RICO Case Statement[1]

**1.  State whether the alleged unlawful conduct is in violation of 18 U.S.C. 1962(a), (b), ( c), and/or (d).**

Defendants' conduct, individually and in concert, violate 18 U.S.C. 1962(a), (b), ( c), and (d) as is further explained

---

[1] It should be noted here that, upon information and belief, and as intimated in Defendants' various pleadings, Defendants, individually or collectively, have in their possession, custody and control many of the documents and information relating to and concerning their RICO activities ("RICO facts") which, in part, confirm Plaintiff's RICO claims and his right to damages arising therefrom; therefore, Plaintiff is forced to rely upon information gathered during his inquiries and those of counsel and such information was difficult, at best, to come by due to the nature and scope of these Defendants' covert criminality, intimidation of witnesses,  nefarious activities and multi-layered companies, straw enterprises and moving funds and records from one company to another to avoid tracking and/or detection by federal and/or State agencies, and Plaintiff must explain to this Court that an *upon information and belief* introduction to many of these within RICO facts is needed in order to timely and fully respond herein as Ordered.

herein; in general, they have each, individually and in concert, participated as principal as defined in section 2, title 18, united states code (18 U.S.C.A. § 2) in activities affecting interstate commerce (and possibly foreign commerce) in furtherance of their illicit and illegal enterprises, in part, through a patten of racketeering activities and illegal schemes against Plaintiff and others, to illegally receive income and funds through, in part, theft of Plaintiff's funds through deception and conversion of same to their own use and enjoyment and further expansion of their illicit and illegal enterprises, and these Defendants did conspire to violate each of the provisions of subsection (a), (b) and ( c) of same.

2.   **List each defendant and state that alleged misconduct and basis of liability of each defendant.**

Defendant Vladimir Djurdjev, Individually and/or d/b/a United Cargo, Inc., d/b/a Marunte Trucking, Inc., d/b/a United 2 Logistics, Inc., and/or d/b/a John Doe Company and/or John Doe Corporation ("Defendant Djurdjev"):

Defendant Djurdjev, as an active and principal member of the subject criminal enterprises (at times masquerading as legitimate businesses), planned, directed, participated, ratified, consented to and benefitted from subject pattern of racketeering, criminal acts and nefarious activities as alleged, in part, herein.

In part, Defendant Djurdjev actively misappropriated funds from Plaintiff through, in part, RICO violations, theft by deception, theft by conversion, criminal fraud, wire fraud, mail

fraud, false swearing, extortion, intimidation, and the like.

Each of the alleged acts and omissions by Defendant Djurdjev (hereinafter, "egregious acts") are compensable as damages to Plaintiff, plus compensation to him for RICO treble damages, punitive damages, attorney fees and costs of litigation.

Defendant Bojan ("Bob") Panic, Individually and/or d/b/a United Cargo, Inc., d/b/a Marunte Trucking, Inc., d/b/a United 2 Logistics, Inc., and/or d/b/a John Doe Company and/or John Doe Corporation ("Defendant Panic"):

Defendant Panic, as an active and principal member of the subject criminal enterprises (at times masquerading as legitimate businesses), planned, directed, participated, ratified, consented to and benefitted from subject pattern of racketeering, criminal acts and nefarious activities as alleged, in part, herein.

In part, Defendant Panic actively misappropriated funds from Plaintiff through, in part, RICO violations, theft by deception, theft by conversion, criminal fraud, wire fraud, mail fraud, false swearing, extortion, intimidation, and the like.

Each of the alleged acts and omissions by Defendant Panic (hereinafter, "egregious acts") are compensable as damages to Plaintiff, plus compensation to him for RICO treble damages, punitive damages, attorney fees and costs of litigation.

These defendants, operating under the guise of legitimate trucking concerns and/or Brokers for the shipment of goods and commodities by trucks, affecting the interstate and/or foreign streams of commerce for same, purposefully and knowingly

contracted with third parties for the alleged benefit of
Plaintiff (while he was an employee and, after, when he became
and independent trucker) for shipments throughout the United
States (many of same from and to Georgia, Plaintiff's base); some
of these shipments were from and/or bound for foreign countries.

While Plaintiff picked up and delivered loads exclusively
for and as brokered by Defendant Vladimir Djurdjev, he had
contracted for a 36 cents per mile traveled fee ("mileage fee")
but was only paid one-half that amount and has never been
compensated fully for said mileage fees; from about October 2003
through August 2004, $42,560.00 due for said mileage fees were
illegally withheld and converted by Defendant Vladimir Djurdjev
as alleged in Plaintiff's Complaint [See, i.e., DOC 26, ¶¶ 20,
21, 22, 23 and 24];  further, Defendant Vladimir Djurdjev charged
Plaintiff for insurance premiums (which Defendant Vladimir
Djurdjev alleged paid for him to Canal Insurance Company, 400 E.
Stone Ave., Greenville, SC 29602); in October 2003, Plaintiff was
in an accident and charged $1,000.00 as part of the deductible
for said insurance, however, there was no policy on said vehicle,
Defendant Vladimir Djurdjev had forged same (or had caused same
to be forged by some unknown third-party co-conspirator) and had
given Plaintiff bogus and fraudulent insurance documents  [See,
i.e., DOC 26, ¶¶ 25, 26, 27, 28, 29, 30 and 31].

Later, while Plaintiff picked up and delivered loads for

these Defendants, by and through their various companies (a/k/a alter egos),  Defendants would broker a shipment for Plaintiff and then skim fees off the top and misrepresent the actual amounts due and owing to Plaintiff for carrying same on his truck between pick-up point to delivery point; Defendants would skim off the top "wait fees" due and owing to Plaintiff; Defendant illegally deducted $1,000.00 for Plaintiff's funds as the so-called "emergency fee" to be put into escrow for Plaintiff and the other drivers (which was never done); Defendants illegally added an additional 2% to their brokerage fees; Defendants deducted illegally inflated and/or non-existent lease fees and/or cargo insurance(trailer insurance mentioned in prior paragraphs is different) fees from Plaintiff's funds; Defendants deducted illegally inflated and/or non-existent federal and State fuel taxes from Plaintiff's funds; and, Defendants illegally deducted "phantom" miscellaneous charges from Plaintiff's funds weekly. [See, i.e., DOC 26, ¶¶ 31 through 64].

Defendants, to facilitate these racketeering activities and in furtherance of their illegal enterprises, would contact Plaintiff and confirm his scheduled pick-ups and deliveries through the wires (e-mails, faxes and/or phones) and otherwise correspond with him (letters, invoices, checks, and the like) through the U.S. Postal Service (mails) and/or FedEx, UPS or other private carriers; which gives rise to Plaintiff's claims of

wire and mail fraud and conspiracy to commit same by these
Defendants.

Defendants' false swearings in court documents, insurance
documents, federal and state tax records, DOT documents and IRS
documents were used to further their illegal enterprises and to
injure Plaintiff as alleged.

Defendants' through their intimidation of Plaintiff (and his
witnesses - who have, because of these threats, refused to
testify (using his former incarceration in a Serbian death camp
to bring up old fears) were able to further their illegal
enterprises and injure Plaintiff as alleged.

Defendants violation of the Georgia RICO act is clearly
enumerated in his Complaint.

Defendants through fraud, theft by conversion, theft by
deception, conspiracy to commit same, illegally withheld and/or
took Plaintiff's funds in furtherance of their illegal
enterprises and injured Plaintiff as alleged in his Complaint and
herein.

Plaintiff has over $64,910.00 special damages to date due to
the egregious acts of these Defendants.

3.   **List other alleged wrongdoers and state the alleged
misconduct of each.**

Unknown at this time (*Defendants are in default-**no answer**).

4.   **List the alleged victims and state how each victim was**

**allegedly injured.**

Plaintiff and other drivers for Defendants (much the same for each "victim"). The other drivers have been intimidated by Defendants, their agents and co-conspirators and have now refused to testify (but have given Plaintiff some of the information cited herein)

Plaintiff:

See Doc #26, ¶¶ 17 through 103; especially, 51 through 60 and ¶ 2 above.

Plaintiff has lost considerable funds, has been threatened and intimidated, his witnesses have been scared off by these Defendants, he has had to incur attorney fees and costs in excess of $12,500.00, has had his life and family relations disrupted, his business has suffered financially, he has been defamed and slandered and has had illegally taken from him and/or illegally withheld from him, funds in excess of $52,410.00 plus at least $12,500.00 in attorney fees and litigation costs to date.

5.  **Describe the pattern of racketeering activity alleged in each RICO claim. The description of the pattern of racketeering shall include the following information:**

    **(a)  List the alleged predicate acts and the specific statues that were allegedly violated;**

Defendants, individually and/or in concert, participated in and conspired to do the following criminal acts: Georgia O.C.G.A.

§§ 16-4-1, *et seq.*; 16-2-22; 16-4-3; 16-4-8; 16-8-3; 16-8-4; 16-10-2; 16-10-20; 16-10-93; 16-11-37; 16-9-1; 16-8-2; 16-10-32; 33-1-9; and, <u>federal</u> 18 U.S.C. §§ 1341, 1343, 1956; 1951; 2391; and, 18 U.S.C. § 1961(1)(A) through 1961(1)(D).[2]

(b)  **Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;**

See, Doc #26, Plaintiff's *Complaint*, ¶¶ 17 through 103; especially, ¶¶ 51 through 60 and ¶ 2 above.

( c) **If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R, Civ. P. 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;**

See, Doc #26, Plaintiff's *Complaint*, ¶¶ 17 through 103; especially, ¶¶ 51 through 60 and ¶ 2 above.  Further, the wire fraud and mail fraud (as additionally defined herein) occurred

---

[2]  Plaintiff has not determined what Illinois criminal statutes have been violated and used against Plaintiff under, in part, Illinois RICO statutes as this case has just been transferred to this Court and Plaintiff has not had time to find and/or retain local counsel in the Chicago, IL area and he asks this Court's indulgence and allow him time to determine same.

shortly before subject loads were scheduled for pick up and delivery by Defendants and subject faxed and mailed invoices and checks were on a weekly basis just after the work week ended.

    **(d)  State whether there has been a criminal conviction for the predicate acts;**

Not to Plaintiff's knowledge.

    **(e)  State whether civil litigation has resulted in a judgment in regard to the predicate acts;**

Not to Plaintiff's knowledge.

    **(f)  Describe how the predicate acts form a "pattern of racketeering activity;"**

These Defendants by artifice and intimidation and theft constantly moved operations and forged documents over at least a five year period and did so criminally against many victims (individuals such as Plaintiff and federal and State agencies) to injure their real and personal property and deplete their funds. and

    **(g)  State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.**

These Defendants schemes involved the expansion of their trucking holdings, brokerage of shipments, acquiring of real and personal property and funds through a pattern of criminal activities, in part, enumerated herein and each such criminal act

*Page 10 of  23*

or omission ("egregious act") was a link in a complex chain of deceit and extortion to gain ever-greater power and illicit influence over interstate (and possible international) commerce through the shipment of goods and commodities over state lines and through the world markets.

6.  **Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

    (a)  **State the names of the individuals, partnership, corporations, associations, or other legal entities, which allegedly constitute the enterprise;**

Defendants, their alter egos and still-unknown third-party co-conspirators.

    (b)  **Describe the structure, purpose, function and course of conduct of the enterprise;**

Defendants would defraud truck drivers and State and federal agencies(skim load fees, bogus insurance deduction, bogus fuel tax deductions, inflated lease deductions, bogus deductibles, and the like) and with their ill-gotten gains, expand their base of operations and influence to defraud additional truck drivers and State and federal agencies to criminally obtain additional illegal income to  expand their base of operations and influence to defraud additional truck drivers and State and federal agencies and so forth and so forth, *ad nauseam*.  Once the

*Page 11 of  23*

overtness of their egregious acts became translucent, Defendants would change names, move operations and/or start over, using the funds they illegally obtained from their RICO activities as seed money to continue the enterprise as before with a "new" face.

    ( c) **State whether any defendants are employees, officers or directors of the alleged enterprise;**

Defendants are, on the face of it, officers and directors but they are individuals as well as the subject companies and corporations (enterprises) are merely their alter egos; thus, the complexity of their schemes and covertness of their activities.

    (d)  **State whether any defendants are associated with the alleged enterprise;**

Both Defendants are intimately involved in all aspects.

    (e)  **State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise;**

Defendants are, on the face of it, officers and directors but they are individuals as well as the subject companies and corporations (enterprises) are merely their alter egos; thus, the complexity of their schemes and covertness of their activities. and

    (f)  **If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether**

such defendants are perpetrators, passive instruments,

or victims of the alleged racketeering activity.

Defendants are, on the face of it, officers and directors but they are individuals as well as the subject companies and corporations (enterprises) are merely their alter egos; thus, the complexity of their schemes and covertness of their activities. These Defendants, however, are the perpetrators and are NOT merely passive instruments or victims of the alleged racketeering activities(*albeit*, some of their co-conspirators may well be).

7.    **State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

At this stage in his investigation, Plaintiff believes that they have merged somewhat, however, due to the complexity of the schemes and racketeering activities, the number of victims and the scope and depth of each scheme, Plaintiff can only give his best educated guess as no discovery has been conducted and, as admitted, Defendants have most of the documents, records and witnesses in the Chicago, IL area (that's one of the reasons they gave to have this case transferred to this Court).

8,    **Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

Defendants run trucking and brokerage concerns, do property speculations, lease trucks, equipment and buildings (or portions thereof), "sell" truck and cargo insurance and the like and some of it might be on-going legitimate businesses but, for the most part, the "normal" activities are a thin patina covering the "real" racketeering activities and/or the "normal" activities eventually morph into the "real" racketeering activities ("accidentally on purpose" or by design).

9.   **Describe any benefits the alleged enterprise receives from the alleged pattern of racketeering.**

Power, money and expansion of their holdings in trucking of goods and illegal influence over interstate and foreign commerce.

10.  **Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

Defendants, by illegally and negatively effecting the brokering of loads, the payment of truckers' insurance premiums, the payment of state and federal fuel taxes, the withholding of social security, income (federal and state) taxes and state withholding and unemployment taxes, allow criminal elements to infect the stream of commerce and the flow of goods and commodities through out the United States and the world.

11.  **If the complaint alleges a violation of 18 § U.S.C. § 1962(a), provide the following information:**

    **(a)   State who received the income derived from the pattern**

of racketeering activity or through the collection of
an unlawful debt;

Defendants, individually and in concert, took said funds.
and,

**(b)  Describe the use or investment of such income.**

Defendants used said illegal income, in part, for the
expansions of their businesses, purchases of new businesses and
trucks and purchases of real and personal property for their own
use and enjoyment to Plaintiff's financial detriment.

12.  If the complaint alleges a violation of 18 U.S.C. § 1962
(b), describe in detail the acquisition or maintenance of
any interest in or control of the alleged enterprise.

Defendants used said illegal income, in part, for the
expansions of their businesses, purchases of new businesses and
trucks and purchases of real and personal property for their own
use and enjoyment to Plaintiff's financial detriment and for the
continuation of their expansion and illegal influences.

13.  If the complaint alleges violation of 18 U.S.C. § 1962( c),
provide the following information:

**(a)  State who is employed by or associated with the
enterprise;**

Defendants and unknown third-party co-conspirators.
**and**

**(b)  State whether the same entity is both the liable**

*Page 15 of  23*

"person" and the "enterprise" under § 1962 ( c).

Yes, as far as Plaintiff can determine at this time.

14. **If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.**

The Defendants conspired to commit subject criminal acts and omissions against Plaintiff and other victims for more than five years and used and abused their fiduciary duty to Plaintiff and other victims to fraudulently skim broker fees, illegally invoice insurance premiums and lease costs, fraudulently withhold taxes and insurance deductibles from Plaintiff's funds, purposefully forge insurance, IRS, DOT and other State and federal documents to Plaintiff's detriment and conspire with each other and other unknown third parties to defraud Plaintiff, intimidate witnesses and extort money and labor from them for at least five years. See, i.e., Doc #26, Plaintiff's *Complaint*, ¶¶ 25 through 61.

15. **Describe the alleged injury to business or property.**

Plaintiff's business income, relations and growth suffered because of the constant bleeding of its life-blood, capital, at a time which was critical to Plaintiff in order for him to expand his operations, become independent of Defendants' illegal grip and to generate income which was commensurate with his abilities; further, this loss of income caused Plaintiff consequential loss of ability to earn income and strained his resources causing preventative maintenance on his trailers and cab to go wanting.

**16.  Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

The Defendants, by illegally siphoning off and skimming funds belonging to Plaintiff, were directly responsible for Plaintiff's subject injuries and the subsequent loss of income, ability to expand his operations, once he became an independent driver, and his future ability to earn income commensurate with his abilities as a truck driver and owner-operator (Defendants' organized crime tentacles are wide-reaching in the Chicago, IL area and Defendants have prevented Plaintiff, through, in part, blackballing or intimidation, from getting "good-paying" loads.

**17.  List the damages sustained for which each defendant is allegedly liable.**

As enumerated herein, Defendants are jointly and severally liable for the following:

<u>Combined Federal and State Claim(s)</u>:

By way of further enumerating his specific claims, injuries to his assets and specific monetary damages, Plaintiff offers the following:

<u>Special Damages</u>:

A.  Plaintiff claims the following, to-date, special damages:

     $ 42,500.00          (MILEAGE AMOUNTS CONVERTED);

     $  7,410.00          (CONVERTED TRIP FEES, ETC.); AND,

     $  2,500.00          (*PHANTOM* CHARGES CONVERTED).

| | |
|---|---|
| $ 52,410.00 | PARTIAL TOTAL FUNDS CONVERTED; AND, |
| $ 12,500.00 | ATTORNEY FEES AND COSTS TO DATE. |

$ 64,910.00     **TOTAL SPECIAL DAMAGES TO DATE.**

Additional Allegations and/or Claims For Damages:

B.   Defendants, upon information and belief, have illicitly transferred funds and assets between companies and then, finally, to Defendant United 2 Logistics, their alter ego, to hide same from Plaintiff, creditors and the IRS.

C.   Defendants, upon information and belief, are now claiming to the DOT, etc., that they only have 16 trucks to DOT when they, in fact, have 50 trucks, at least, under their possession, custody and control.

D.   Defendants, upon information and belief, only paid insurance (cargo, trip, umbrella, business, accident, DOT-required, etc) for 8 to 16 trucks they were using in their business(es) and forged the paperwork for the other 34 to 42 trucks they were using and from which they were benefitting.

E.   Over and above the aforementioned *Special Damages*, Defendants are liable to Plaintiff for, in part, additional damages, to wit: $170,230.00, at minimum, as follows:

   1.   Treble RICO and Punitive damages for theft by deceit and theft by conversion and illegal and illicit fraud

for 97 occurrences relating to and/or concerning *mileage funds conversion* ($42,500.00) as outlined herein in an amount, at minimum of $1,000.00 in punitive damages per occurrence or $97,000 plus $126,500 treble RICO damages (sub total of $223,500.00).

2.  Treble RICO and Punitive damages for theft by deceit and theft by conversion and illegal and illicit fraud for 97 occurrences relating to and/or concerning *inflated trip fees* ($7,410.00) as outlined herein in an amount, at minimum of $1,000.00 in punitive damages per occurrence or $97,000 plus $22,230 treble RICO damages (sub total of $119,230.00).

3.  Treble RICO and Punitive damages for theft by deceit and theft by conversion and illegal and illicit fraud for 44 occurrences relating to and/or concerning *weekly phantom charges* ($2,500.00) as outlined herein in an amount, at minimum of $1,000.00 in punitive damages per occurrence or $44,000 plus $7,500 treble RICO damages (sub total of $51,500.00).

4.  Treble RICO damages for consequential damages (including, in part, attorney fees and costs to date of at least ($12,500.00) and illicit fraud for a minimum of 238 occurrences relating to and/or concerning

> *Defendants' racketeering activities and schemes* as
> outlined herein in an amount, at minimum of $1,000.00
> in punitive damages per occurrence or $238,000 plus
> $37,500 treble RICO damages (sub total of $275,500.00).

5.    Thus, Defendants are liable to Plaintiff treble RICO
      damages of $193,730.00, to date, punitive damages of
      $476,000.00, at minimum, for a total of at least
      $669,230.00 in additional damages.

F.    Defendants are liable to Plaintiff for, at a minimum,
      *Special damages* ($64,910.00), *treble RICO damages*
      ($193,730.00) and *punitive damages* ($476,000.00) for an
      aggregate amount of: SEVEN HUNDRED, THIRTY-FOUR THOUSAND,
      SIX HUNDRED, FORTY & 00/100ths ($734,640.00) DOLLARS.

G.    The new evidence of Defendants' RICO violations and
      nefarious/racketeering activities relating to and concerning
      Cannell Insurance Company is clear evidence of their schemes
      and long-standing predicate acts and their pattern of such
      criminal enterprises to injure Plaintiff and many others.

H.    Plaintiff reserves the right to amend or supplement his
      within allegations, claims, damages and prayers for relief
      as new or better information is obtained through the
      discovery process or otherwise.

18.   **Provide any additional information that might be helpful to
      the court in processing the RICO claim.**

Canal Insurance Company, by and through its counsel of record (house counsel we believe) has requested that it intervene in this matter as soon as Plaintiff can hire local (Chicago, IL) counsel and Plaintiff ask this Court to allow him additional time to hire local counsel and, if proper, allow Canal Insurance Company to intervene in this matter if it so desires and if it will expedite matters for this Court and lead to the truth.

<u>Affidavit, Verification and Certification by Plaintiff</u>:

Plaintiff, under penalty of law and perjury prohibitions to giving false statements, testimony or evidence, certifies that, notwithstanding the fact that some of the verbiage and syntax may be that of Ralph J. Villani, Esq., his counsel, the within and foregoing claims, allegations, conclusions, third-party evidence and/or other relevant facts relating to and concerning, in part, his instant *RICO Case Statement* and relating to and concerning his claims and prayers for relief, are from his own personal knowledge and beliefs and are true and correct.

*FURTHER AFFIANT SAYETH NAUGHT.*

This 14th day of July, 2008.

/s/ *Fadil Delkic*    (as authorized)
FADIL DELKIC, Plaintiff/Affiant

**WHEREFORE,** Plaintiff prays that this Court allow said RICO claims to remain as plead (or as refined during discovery), allow this case be tried before a jury of twelve and that this Court

award him, at a minimum, *Special damages* ($64,910.00), *treble RICO damages* ($193,730.00) and *punitive damages* ($476,000.00) for an aggregate amount of: **SEVEN HUNDRED, THIRTY-FOUR THOUSAND, SIX HUNDRED, FORTY & 00/100ths ($734,640.00) DOLLARS**(*an amount well above the diversity threshold and which Plaintiff can reasonably prove and/or which this Court and/or a jury can reasonably award*) plus compensatory, consequential and additional punitive damages, reasonable attorney fees and costs of litigation, additional treble RICO damages, stubbornly litigious damages in amounts as awarded by a fair and impartial jury and that this Court award Plaintiff such further and other relief against these Defendants as this Court deems fair, just and/or equitable.

Respectfully submitted,

This 14th day of July, 2008.

VILLANI & ASSOCIATES, P.

/s/ Ralph J. Villani
Ralph J. Villani
GA Bar No. 727700

2483 Heritage Village
Suite 16-404
Snellville, GA 30078-6140[3]

(TEL)   (770) 985-6773
(FAX)   (770) 979-5190

(E/M)   law2001@bellsouth.net

COUNSEL FOR PLAINTIFF

---

[3]   New address for attorney Ralph J. Villani, Plaintiff's counsel.

COMBINED CERTIFICATION OF COMPLIANCE AND CERTIFICATE OF SERVICE[4]

I certify that this *RICO Case Statement* has been prepared in 12-point Courier New font and it complies with this Court's LR.

I further certify that I, this day, electronically filed Plaintiff's *RICO Case Statement* with the Clerk of this Court using the CM/EMF system which will automatically send E-mail notification of such filing to the following attorney of record:

Salmeh Fodor, Esq.   *skfodor@mklawllc.com*

or *via* U.S. Mail to:

Salmeh Fodor, Esquire
MARCHMAN & KASRAIE, LLC
1755 The Exchange, Suite 339
Atlanta, Georgia 30339

This 14th day of July, 2008.

VILLANI & ASSOCIATES, P.C.

/s/ Ralph J. Villani

Ralph J. Villani
GA Bar No. 727700

2483 Heritage Village
Suite 16-404
Snellville, GA 30078-6140

(TEL)  (770) 985-6773
(FAX)  (770) 979-5190

(E/M)  *law2001@bellsouth.net*   COUNSEL FOR PLAINTIFF

---

[4]  Said compliance is made with the proviso that this Court will allow Plaintiff's Georgia counsel (as local counsel has not been retained yet by Plaintiff) to file same electronically; if Plaintiff's counsel cannot file same electronically using his Georgia password, he will submit same to this Court's clerk, with a copy to the presiding judge, as if filing same in person (with an Original and several return copies and a copy for this Court); if, however, counsel cannot electronically file same, he will mail copy to opposing counsel and FedEx original and copies to this Court this day as directed by Willia Harmon, court deputy,.